Filed 8/5/15; pub. & mod. order 9/1/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIE COLLIER, | |
| Plaintiff and Respondent, | G048735 |
| v. | (Super. Ct. No. 30-2012-00609744) |
| PATRICK HARRIS, as Executor, etc., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge.  Reversed and remanded.

Sall Spencer Callas & Krueger, Robert K. Sall and Michael A. Sall for Defendant and Appellant.

Ostendorf Tate Barnett and Wayne P. Tate for Plaintiff and Respondent.

\*                    \*                    \*

Defendant and appellant Chris Korpi[1] and plaintiff and respondent Julie Collier were active supporters of competing candidates in a local school board election. To educate voters about the candidates he supported, Korpi registered Collier's name and the name of an advocacy group she formed as domain names, and then redirected all Internet users who visited those Web sites to the Web sites for the candidates he supported. Collier filed this action against Korpi, alleging he registered the domain names and illegally used them to mislead the public into thinking she supported his candidates.

Korpi moved to strike Collier's complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16),[2] which requires a plaintiff to present evidence establishing a probability of prevailing on the alleged claims if the defendant first shows the conduct on which the claims are based arose from constitutionally-protected free speech or petition activities. The trial court denied Korpi's motion because it found he failed to show Collier's claims arose from free speech activities protected by the anti-SLAPP statute. Although the court acknowledged political commentary is the quintessential form of free speech, it concluded Korpi's conduct in registering the domain names and redirecting Internet traffic did not further Korpi's free speech rights. We disagree.

To be protected by the anti-SLAPP statute, the conduct on which the challenged claims are based does not have to constitute free speech. Rather, the conduct need only help to advance or assist a person in the exercise of his or her free speech rights. Registering the domain names and redirecting Internet users to the other Web

---

[1] The caption identifies Patrick Harris as the defendant and appellant because Korpi, who was the defendant in the trial court and the original appellant on appeal, passed away during the pendency of this appeal. We previously granted Harris's application as the executor of Korpi's estate to be substituted for Korpi as the appellant in this matter. We refer to Korpi throughout this opinion because his conduct is at issue.

[2] All statutory references are to the Code of Civil Procedure unless otherwise stated.

2

sites assisted Korpi in exercising his free speech rights because those acts provided him with additional forums to reach the public with information about the school board candidates. The statute required nothing more.

Regardless whether Korpi's conduct advanced or assisted him in exercising his free speech rights, Collier contends the anti-SLAPP statute does not protect Korpi's criminal impersonation of another to deceive the public. Ordinarily, courts do not consider the alleged impropriety of the defendant's conduct until the second stage of the anti-SLAPP analysis, where the court must determine whether the plaintiff presented evidence establishing a probability of prevailing on the merits. The propriety of the defendant's conduct, however, may be considered in the first stage if the defendant concedes or the evidence conclusively establishes the defendant's conduct was criminal as a matter of law. It is not enough that the defendant's conduct violated a civil statute; the defendant's conduct must be criminal to deprive the defendant of the broad protection the anti-SLAPP statute provides for free speech and petition activities. As explained below, Korpi does not concede his conduct was criminal and Collier failed to offer evidence establishing Korpi's conduct was criminal as a matter of law.

Accordingly, the trial court erred in denying Korpi's motion without determining Collier presented evidence establishing a probability of prevailing on her claims. We therefore reverse and remand for the trial court to determine whether Collier met her burden on the second stage of the anti-SLAPP analysis. Our conclusion the anti-SLAPP statute applies to Korpi's conduct should not be construed as an approval of his conduct. The authorities discussed below compel that conclusion. Nonetheless, Korpi's conduct still may subject him to liability if Collier can meet her burden on the second stage of the anti-SLAPP analysis.

I

FACTS AND PROCEDURAL HISTORY

Korpi is an education activist involved in the politics of the Capistrano Unified School District (District). Although he does not hold a leadership position, he volunteers his time with Capistrano Unified Children First (Children First), a nonprofit organization dedicated to improving the quality of education in the District. Korpi was a vocal supporter of certain candidates during a recall election in 2010 and the regular election in 2012 for seats on the District's Board of Trustees (Board). The candidates Korpi supported include Gary Pritchard and Carol McCormick.

Collier is a credentialed teacher and parent of two children who attend school in the District. Based on her experience with the District, she formed Parents Advocate League as a resource for parents who believe their local schools are not meeting their children's academic needs. Collier also was a vocal supporter of certain candidates running for the District's Board during the 2012 election. She and Korpi held opposing views on education and she supported candidates attempting to unseat the candidates Korpi supported.

Korpi thought Collier might run for a seat on the District's Board in the upcoming November 2012 election.[3] Accordingly, in June 2012, he registered the domain names www.juliecollier.com and www.parentsadvocateleague.com.[4] He intended to use the domain names to create Web sites that would discuss Collier's

---

[3] Collier contends Korpi knew she would not run for a seat on the District's Board because the seat for the area in the District where Collier lived was not up for election in 2012.

[4] Korpi also registered the names of Dawn Urbanek and Bill Perkins as domain names. Like Collier, Urbanek was active in District politics and supported candidates for the District's Board that shared her beliefs. Perkins was a candidate for one of the available seats on the District's Board in the 2012 election.

4

qualifications, her relationship with Parents Advocate League, and why he believed voters should not elect Collier. Korpi registered the domain names with GoDaddy.com through an existing, private account he had with Domains by Proxy, LLC. Consequently, Korpi's identity as the registrant was not publicly available. Collier's attorney discovered Korpi was the registrant after writing directly to Domains by Proxy and explaining someone used one of its accounts to register Collier's name as a domain name.

In September 2012, after learning Collier was not running for a seat on the District's Board, Korpi decided to use the domain names to support his candidates in the election. Instead of creating Web sites using the domain names, Korpi used the names to redirect Internet traffic to Pritchard's campaign Web site and Children First's Web site. Whenever a person typed in or clicked on a link to the domain names www.juliecollier.com or www.parentsadvocateleague.com, the person was instantly redirected to Pritchard's campaign Web site or Children First's Web site. Korpi did so to increase the number of hits for these latter Web sites, and to ensure people conducting searches using Collier's name or Parents Advocate League's name would be directed to Web sites containing information about the candidates Korpi supported.

Collier first learned about the domain names and redirection to the other Web sites in mid-October 2012. She promptly hired an attorney to discover who was using the domain names in this manner and to stop the person from doing so. Also in mid-October, a local news reporter contacted Korpi to inquire whether he was using the domain names and causing the redirections. Korpi terminated the redirections and cancelled the domain name registrations after his conversation with the reporter.

In early November 2012, Collier filed this action against Korpi, alleging he registered the domain names and used them to mislead the public into thinking Collier supported Korpi's candidates. The operative second amended complaint alleges causes of action for invasion of privacy, false impersonation (Pen. Code, § 528.5), and illegal use of a domain name (Bus. & Prof. Code, § 17525, subd. (a)). Korpi responded by filing

5

a special motion to strike each of Collier's causes of action under the anti-SLAPP statute. The trial court denied the motion because it concluded Collier's claims did not arise from First Amendment activity, and therefore the anti-SLAPP statute did not apply. According to the court, Collier's "Complaint is not that [Korpi] commented on anyone's qualifications for public office or expressed an opinion contrary to her own – it is that he obtained domain names and used them to make it appear that his 'commentary' *came from* [*Collier*]. That conduct does not arise from conduct in furtherance of the exercise of the constitutional right of free speech." Korpi timely appealed.

II

DISCUSSION

A.    *Governing Anti-SLAPP Principles*

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted . . . section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056; see *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 142 (*Tamkin*).) Under section 425.16, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"To determine whether a lawsuit or cause of action should be disposed of as a SLAPP suit, section 425.16 establishes a two-part test. Under the first part, the party bringing the anti-SLAPP motion has the initial burden of showing that the lawsuit, or a

6

cause of action in the lawsuit, arises from an act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity. [Citation.] Once the defendant has met its burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the lawsuit or on the cause of action. [Citation.] Only a cause of action that satisfies both parts of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Tamkin*, *supra*, 193 Cal.App.4th at p. 142.)

"In assessing whether a cause of action arises from protected activity, '"we disregard the labeling of the claim [citation] and instead 'examine the *principal thrust or gravamen* of a plaintiff's cause of action . . .' . . . . We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" [Citation].' [Citation.] '[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.'" (*Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510, 1520 (*Hunter*).)

"When evaluating whether the defendant has carried its burden under the first prong of the anti-SLAPP statute, 'courts must be careful to distinguish allegations of conduct on which liability is to be based from allegations of motives for such conduct. "[C]auses of action do not arise from motives; they arise from acts." [Citation.]' [Citation.] '"The court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is actually being challenged, not to determine whether the conduct is actionable."'" (*Hunter*, *supra*, 221 Cal.App.4th at p. 1520.)

"We review de novo the court's order granting [or denying a] section 425.16 special motion to strike. [Citation.] 'We consider "the pleadings, and

7

supporting and opposing affidavits . . . upon which the liability or defense is based."
[Citation.]  However, we neither "weigh credibility [nor] compare the weight of the
evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and
evaluate the defendant's evidence only to determine if it has defeated that submitted by
the plaintiff as a matter of law.""" (*Freeman v. Schack* (2007) 154 Cal.App.4th 719,
727.)

B.       *Collier's Claims Are Based on Conduct in Furtherance of Korpi's Constitutional
         Right of Free Speech*

A defendant meets his or her burden on the first step of the anti-SLAPP
analysis by demonstrating the acts underlying the plaintiff's cause of action fall within
one of the four categories spelled out in section 425.16, subdivision (e).  (*City of Cotati v.
Cashman* (2002) 29 Cal.4th 69, 78; *Hunter*, *supra*, 221 Cal.App.4th at p. 1519.)  These
categories define the scope of the anti-SLAPP statute by listing acts which constitute an
"'act in furtherance of a person's right of petition or free speech under the United States
or California Constitution in connection with a public issue.'"[5]  (§ 425.16, subd. (e).)

The fourth category is a "catch-all" that makes the anti-SLAPP statute
applicable to claims based on "'any other conduct in furtherance of the exercise of the
constitutional right of petition or the constitutional right of free speech in connection with
a public issue or an issue of public interest.'" (*Lieberman v. KCOP Television, Inc.*

---

[5]       In its entirety, section 425.16, subdivision (e) states, "As used in this
section, 'act in furtherance of a person's right of petition or free speech under the United
States or California Constitution in connection with a public issue' includes:  (1) any
written or oral statement or writing made before a legislative, executive, or judicial
proceeding, or any other official proceeding authorized by law, (2) any written or oral
statement or writing made in connection with an issue under consideration or review by a
legislative, executive, or judicial body, or any other official proceeding authorized by
law, (3) any written or oral statement or writing made in a place open to the public or a
public forum in connection with an issue of public interest, or (4) any other conduct in
furtherance of the exercise of the constitutional right of petition or the constitutional right
of free speech in connection with a public issue or an issue of public interest."

(2003) 110 Cal.App.4th 156, 164, italics omitted (*Lieberman*); see § 425.16, subd. (e)(4).)  Accordingly, this category extends the protection of the anti-SLAPP statute beyond merely conduct that constitutes speech to "all conduct *in furtherance* of the exercise of the right of free speech in connection with a public issue." (*Lieberman*, at p. 166.)  In 1997, the Legislature added this category to section 425.16, along with the directive that "this section shall be construed broadly," to overcome earlier appellate decisions that narrowly construed the statute's scope.  (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039-1040.)

"A cause of action arises from protected activity within the meaning of section 425.16, subdivision (e)(4) if the plaintiff's claims are predicated on conduct that is (1) in furtherance of the right of free speech, and (2) in connection with a public issue or issue of public interest." (*Hunter*, *supra*, 221 Cal.App.4th at p. 1520; *Tamkin*, *supra*, 193 Cal.App.4th at pp. 142-143.)  "'An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right.'" (*Hunter*, at p. 1521, quoting *Tamkin* at p. 143; see *Lieberman*, *supra*, 110 Cal.App.4th at p. 166.)

For example, in *Lieberman*, the Court of Appeal concluded a television station acted in furtherance of its free speech rights when it illegally recorded a doctor's conversations with two patients as part of the station's investigation and news report on doctors who improperly prescribe controlled substances.  The *Lieberman* court explained, "Reporting the news is free speech[, and doing so] usually requires the assistance of newsgathering, which therefore can be construed as undertaken *in furtherance* of the news media's right to free speech.  Because the surreptitious recordings here were in aid of and were incorporated into a broadcast in connection [with] a public issue, we conclude [the doctor's] complaint fell within the scope of section 425.16." (*Lieberman*, *supra*, 110 Cal.App.4th at p. 166.)  The appellate court nonetheless affirmed the trial court's decision denying the station's special motion to strike because the doctor had

9

presented evidence establishing a probability of prevailing on his claims against the station. (*Id*. at p. 170.)

Similarly, in *Hunter,* the Court of Appeal found the plaintiff's age and gender discrimination claims against a local television station were based on protected activity because the station's decisions to hire younger, less qualified females as weather anchors were acts in furtherance of the station's free speech rights. The *Hunter* court explained, "Our courts have previously recognized that '[r]eporting the news' [citation] and 'creat[ing] . . . a television show' both qualify as 'exercise[s] of free speech.' [Citations.] [The station's] selections of its . . . weather anchors, which were essentially casting decisions regarding who was to report the news on a local television newscast, 'helped advance or assist' both forms of First Amendment expression. The conduct therefore qualifies as a form of protected activity." (*Hunter*, *supra*, 221 Cal.App.4th at p. 1521.) Consequently, the appellate court reversed the trial court's decision the anti-SLAPP statute did not apply to the plaintiff's discrimination claims. (*Id*. at p. 1528; see *Tamkin*, *supra*, 193 Cal.App.4th at p. 143 [writer's use of plaintiffs' names in draft script for television show qualified as protected activity under anti-SLAPP statute because it "helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show"].)

"'"[T]he constitutional guarantee [of free speech] has its fullest and most urgent application precisely to the conduct of campaigns for political office."' [Citation.]" (*Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 949-950.) Indeed, "'[t]he right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech. "Public discussion about the qualifications of those who hold or who wish to hold positions of public trust presents the strongest possible case for applications of the safeguards afforded by the First Amendment."'" (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1016.) "The character and qualifications of a candidate for public office constitutes a 'public issue or public interest'" for purposes

10

of section 425.16. (*Id*. at p. 1015.) "Section 425.16 [therefore] applies to suits involving statements made during political campaigns." (*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451.)

Here, Collier does not base her claims on the content of any statement Korpi made or the content of any Web site to which he redirected Internet users. Rather, the gravamen of Collier's claims is that Korpi registered Collier's and Parents Advocate League's names as domain names, and then used those domain names to redirect Internet users seeking information about Collier or Parents Advocate League to Web sites endorsing and discussing candidates for the District's Board that Collier and Parents Advocate League did *not* support. The foregoing cases nonetheless compel the conclusion the acts on which Collier bases her claims constitute protected activity under the anti-SLAPP statute because the acts assisted Korpi in the exercise of his free speech rights. Thus, the acts do not have to constitute speech; they merely need to help advance or assist in the exercise of free speech rights. (*Lieberman*, *supra*, 110 Cal.App.4th at p. 166; see *Hunter*, *supra*, 221 Cal.App.4th at p. 1521; *Tamkin*, *supra*, 193 Cal.App.4th at p. 143.)

Registering the domain names helped to advance and assist Korpi in exercising his free speech rights because it provided him additional avenues or forums in which to exercise those rights. To the extent redirecting Internet traffic to other Web sites was not itself speech, it was conduct that assisted Korpi in exercising his free speech rights because it directed the public to the information Korpi wished to convey about the candidates in the 2012 election. Under this analysis, Korpi's conduct is no different than a person printing a political flyer or mailer that supports or criticizes a candidate for political office. Distributing the flyer or mailer constitutes speech, but the act of printing the flyer or mailer furthers that speech because the speech could not occur without the flyer or mailer first being printed. Here, Korpi's political speech about the candidates he,

11

Collier, and Parents Advocate League support could not have occurred without Korpi registering the domain names and redirecting Internet traffic from those domain names.

Collier does not address whether the acts on which she bases her claims assisted Korpi in exercising his free speech rights. Instead, Collier argues Korpi's conduct is not worthy of protection under section 425.16 because it constitutes criminal impersonation of another committed to deceive the public. Collier, however, confuses the threshold question of whether her claims are based on protected activity and the question whether she has established a probability of prevailing on the merits.

As explained above, the first step of the anti-SLAPP analysis focuses on the acts the plaintiff alleges as the basis for his or her claims, not the motive or purpose the plaintiff attributes to the defendant's acts; the first step asks whether those acts constitute acts in furtherance of the constitutional rights of free speech or petition. (*Hunter*, *supra*, 221 Cal.App.4th at p. 1520.) "[A]ny 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 (*Navellier*); *Hunter*, at pp. 1521-1522; *Lieberman*, *supra*, 110 Cal.App.4th at p. 165.)

Indeed, courts have consistently held acts a plaintiff alleges are unlawful or illegal are nonetheless protected activity under the anti-SLAPP statute if the acts assist or facilitate the defendant's free speech rights. (See, e.g., *Lieberman*, *supra*, 110 Cal.App.4th at pp. 165-166 [anti-SLAPP statute applied to claims based on allegedly illegal recording of conversations between doctor and patient]; *Doe v. Gangland Productions, Inc.* (9th Cir. 2013) 730 F.3d 946, 954 [California's anti-SLAPP statute applied to allegedly unlawful broadcast of interview without concealing plaintiff's identity; "The district court incorrectly concluded that under the anti-SLAPP statute, a lawful broadcast is in furtherance of Defendants' right of free speech, but an unlawful broadcast is not"].)

12

The lone exception to this rule is where the defendant concedes the acts on which the plaintiff bases his or her claims are illegal or the evidence conclusively establishes the defendant's conduct is illegal as a matter of law. (See, e.g., *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) We examine whether this narrow exception applies here.

C.      *Korpi's Conduct Was Not Illegal as a Matter of Law*

Not all speech and petition activities are constitutionally protected. (See, e.g., *U.S. v. Alvarez* (2012) 567 U.S. ___, ___; [132 S.Ct. 2537, 2544] [categories of speech First Amendment does not protect include speech intended to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, so-called "'fighting words,'" child pornography, fraud, true threats, and speech presenting some grave and imminent threat government has power to prevent].) Consequently, "not all speech and petition activity is protected by section 425.16." (*Flatley*, *supra*, 39 Cal.4th at p. 313.)

In *Flatley*, the Supreme Court declared acts that are illegal as a matter of law are not protected by the anti-SLAPP statute, and a defendant who commits such acts therefore cannot invoke the statute's protections even though his or her acts were otherwise speech or petition activities. (*Flatley*, *supra*, 39 Cal.4th at p. 317.) For example, an attorney's settlement demand letter on a client's behalf generally is protected as a petition activity, but when the letter constitutes criminal extortion as a matter of law it is not protected and the attorney may not invoke the anti-SLAPP statute to strike claims based on the letter. (*Flatley*, at pp. 305, 330, 333.) Similarly, although political campaign contributions generally are protected speech activity, a defendant whose contributions constitute illegal money laundering as a matter of law may not invoke the anti-SLAPP statute to strike claims based on those contributions. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367, disapproved on other grounds in *Equilon*

13

*Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5, and cited with approval in *Flatley*, at pp. 313-317.)

This exclusion from the anti-SLAPP statute's protections may be applied only when "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal *as a matter of law*." (*Flatley*, *supra*, 39 Cal.4th at p. 320, italics added.) "'Illegal'" in this context means the conduct was criminal; merely violating a statute is not sufficient because the broad protection the anti-SLAPP statute provides for constitutional rights would be significantly undermined if all statutory violations were exempt from the statute. (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 (*Mendoza*).) In establishing this exclusion from the anti-SLAPP statute, the Supreme Court "emphasize[d] that the question of whether the defendant's underlying conduct was *illegal* as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and [that] the showing required to establish conduct *illegal* as a matter of law—either through [the] defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Mendoza*, at p. 1654.)

Here, Collier contends Korpi may not invoke the anti-SLAPP statute's protections because his conduct was illegal as a matter of law because it violated three separate statutes. None of these statutes, however, deprive Korpi of the anti-SLAPP statute's protections on the facts of this case.

Collier first contends Korpi's conduct constituted criminal impersonation of another under Penal Code section 529.[6] That statute makes it a crime for a person to

---

[6] The statute uses the word personate rather than impersonate, but the two words mean the same thing and the cases discussing the statute typically use the word impersonate because it is the more common term. (*Lee v. Superior Court* (2000) 22 Cal.4th 41, 43, fn. 1 (*Lee*); *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1179, fn. 3 (*Casarez*).)

14

falsely impersonate another and in that assumed identity do any "act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person." (Pen. Code, § 529, subd. (a)(3).) A person therefore must commit two acts to violate Penal Code section 529. He or she first must falsely impersonate another person and, while doing so, commit an additional act that "'is something beyond, or compounding, the initial false personation.'" (*Casarez*, *supra*, 203 Cal.App.4th at p. 1179.)

To impersonate someone is "'to pretend or represent oneself to be another.' [Citations.]" (*Lee*, *supra*, 22 Cal.4th at p. 43, fn. 1; *Casarez*, *supra*, 203 Cal.App.4th at p. 1188 ["'To personate another person is to assume to be that person'"].) "[T]he offense of false personation requires a *deliberate effort* to pass oneself off as another." (*People v. Rathert* (2000) 24 Cal.4th 200, 208.) For example, in *People v. Maurin* (1888) 77 Cal. 436, the Supreme Court reversed a conviction under Penal Code section 529 because the defendant had not represented himself to be another person when he signed a doctor's name to a death certificate. The *Maurin* court explained, "there was no evidence that he *personated* Dr. De Derky, or pretended to any human being that he, the defendant, was Dr. De Derky. He certainly made no such pretension to the undertaker . . . or to Mrs. Hagenow, who both knew him well; and those were the only persons with whom he came into contact about the business of the certificate. If he signed the certificate without any authority, and fraudulently wrote De Derky's name when he knew he had no right to do it, he may have been guilty of forgery; but a defendant cannot be convicted of a crime which is not charged in the information under which he is tried. To personate another person is to assume to be that person [and there was no evidence the defendant did so]." (*Maurin*, at p. 439.)

Here, there is no evidence Korpi told or otherwise represented to GoDaddy.com, Domains by Proxy, LLC, or anyone else that he was Collier or an

15

authorized representative of Parents Advocate League when he registered the domain names.  To the contrary, the evidence shows Korpi registered the domain names with GoDaddy.com using a private account with Domains by Proxy, LLC that was opened and maintained in the name of Korpi Marketing Services.  Collier presents no authority that Korpi represented himself to be Collier by registering her name as a domain name.  Similarly, there is no evidence Korpi represented himself to be Collier or Parents Advocate League by redirecting Internet traffic to the Web sites for Pritchard's campaign or Children First.  Whenever anyone typed in or clicked on a link for www.juliecollier.com or www.parentsadvocateleague.com, the person was immediately redirected to Pritchard's or Children First's Web sites.  The address bar for the person's Internet browser stated the person was viewing Pritchard's or Children First's Web site.  Nothing on those Web sites stated they belonged to Collier or represented Collier endorsed any view espoused on those pages.  Moreover, to the extent we treat the redirection as a representation by Korpi that he was Collier, Penal Code section 529's additional act requirement would not be satisfied.  Instead, the claimed false impersonation and the additional act in that assumed identity would be one and the same. (*People v. Guion* (2013) 213 Cal.App.4th 1426, 1432 [the additional act must be "separate from the false personation"].)  Accordingly, there is no conclusive evidence establishing Korpi violated Penal Code section 529 as a matter of law as the *Flatley* exclusion from the anti-SLAPP statute requires.

Collier next argues Korpi's conduct violated Penal Code section 528.5, which makes it a crime for any person to "knowingly and without consent credibly impersonate[] another actual person through or on an Internet Web site or by other electronic means *for purposes of harming, intimidating, threatening, or defrauding another person . . . .*" (Pen. Code, § 528.5, subd. (a), italics added.)  As explained above, however, the *Flatley* exception denies the anti-SLAPP statute's protections to otherwise protected activities only when the evidence conclusively establishes the defendant's

16

conduct is illegal as a matter of law. (*Flatley*, *supra*, 39 Cal.4th at p. 320.) Korpi declares he did not register the domain names and redirect Internet traffic to harm, intimidate, threaten, or defraud anyone. Instead, he declares he engaged in this conduct to increase awareness of the credentials of the candidates he supported. This evidence creates a question of fact that prevents us from concluding Korpi's conduct violated Penal Code section 528.5 as a matter of law.

Finally, Collier contends Korpi's conduct was illegal because it violated Business and Professions Code section 17525, which states, "It is unlawful for a person, with a bad faith intent to register, traffic in, or use a domain name, that is identical or confusingly similar to the personal name of another living person or deceased personality, without regard to the goods or services of the parties." We, however, need not consider whether Korpi violated this statute. As explained above, to lose the anti-SLAPP statute's protection a defendant's conduct must be criminal, not merely a civil wrong. (*Mendoza*, *supra*, 182 Cal.App.4th at p. 1654.) A defendant who violates Business and Professions Code section 17525 is not guilty of a crime and therefore the anti-SLAPP statute would apply even if Korpi's conduct violated that statute.

D.     *We Remand for the Trial Court to Decide the Second Prong*

Based on its ruling Collier's claims did not arise from protected activity, the trial court did not undertake the second-prong analysis to determine whether Collier met her burden to establish a probability of prevailing on her claims. We therefore remand for the trial court to conduct that analysis in the first instance. (*Navellier*, *supra*, 29 Cal.4th at p. 95; *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 271 (*Tuszynska*); *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 (*DuPont*).)

Korpi contends we should decide the question because the trial court ruled on the parties' evidentiary objections and therefore whether Collier established a

17

probability of prevailing is a legal question we may decide in the first instance. According to Korpi, deciding the question now would serve the anti-SLAPP statute's purpose by expeditiously disposing of Collier's allegedly unmeritorious claims. Although we have discretion to decide the second prong because we independently review the question whether Collier established a probability of prevailing (*Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1355 (*Schwarzburd*); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1195 (*Wallace*)), we decline Korpi's invitation to do so in this case.

A few appellate courts have decided the matter when a quick decision was necessary. (See, e.g., *Schwarzburd*, *supra*, 225 Cal.App.4th at p. 1355 [appellate court decided second prong in first instance because contract at issue was set to expire]; *Wallace*, *supra*, 196 Cal.App.4th at p. 1195 [appellate court decided second prong because parties disagreed on how prong should be applied]; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 656; *Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615.) The majority of appellate courts, however, have declined to do so either because contested evidentiary issues existed or simply because it was appropriate for the trial court to decide the issue first. (See, e.g., *Navellier*, *supra*, 29 Cal.4th at p. 95; *Hunter*, *supra*, 221 Cal.App.4th at pp. 1527-1528; *Tuszynska*, *supra*, 199 Cal.App.4th at p. 271; *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 391-392; *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 286; *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347-1348; *DuPont*, *supra*, 78 Cal.App.4th at p. 568.)

Here, Korpi has not established any reason why we should not allow the trial court to decide the second prong in the ordinary course. The Board election underlying the conduct at issue occurred more than two years ago, Korpi stopped redirecting Internet traffic and abandoned the domain names after only a few weeks and well before Collier filed this lawsuit, and there is no urgent need to determine whether Korpi may engage in similar conduct in the future. Moreover, when we decide a matter

18

in the first instance, we deprive the parties of a layer of independent review available to them when the matter is decided in the ordinary course.  We think it best that the able and experienced trial judge decide the matter in the first instance.

## III

### DISPOSITION

The order is reversed and remanded for further proceedings consistent with this opinion.  Korpi shall recover his costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

19

Filed 9/1/15

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIE COLLIER,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>PATRICK HARRIS, as Executor, etc.,<br><br>    Defendant and Appellant. | G048735<br><br>(Super. Ct. No. 30-2012-00609744)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed in the above-entitled matter on August 5, 2015, is hereby MODIFIED as follows:

1.      On page 3, the first sentence of the first full paragraph, beginning with "Regardless whether Korpi's conduct advanced," insert the word "of" between the words "Regardless" and "whether" so the sentence reads:

Regardless of whether Korpi's conduct advanced or assisted him in exercising his free speech rights, Collier contends the anti-SLAPP statute does not protect Korpi's criminal impersonation of another to deceive the public.

2. On page 3, the first sentence of the second full paragraph, beginning with "Accordingly, the trial court erred," insert the word "whether" between the words "determining" and "Collier," delete the words "Collier presented evidence establishing a probability of prevailing," and replace them with the words "Collier's evidence established the requisite probability she would prevail" so the sentence reads:

> Accordingly, the trial court erred in denying Korpi's motion without determining whether Collier's evidence established the requisite probability she would prevail on her claims.

3. On page 3, the second sentence of the second full paragraph, beginning with "We therefore reverse and remand," delete the words "second stage of the anti-SLAPP analysis" and replace them with the words "anti-SLAPP statute's second prong" so the sentence reads:

> We therefore reverse and remand for the trial court to determine whether Collier met her burden on the anti-SLAPP statute's second prong.

4. On page 3, the third sentence of the second full paragraph, beginning with "Our conclusion the anti-SLAPP statute applies," insert the words "on the first prong that" between the words "conclusion" and "the anti-SLAPP statute," and delete the word "an" between the words "construed as" and "approval" so the sentence reads:

> Our conclusion on the first prong that the anti-SLAPP statute applies to Korpi's conduct should not be construed as approval of his conduct.

5. On page 3, the fifth sentence of the second full paragraph, beginning with "Nonetheless, Korpi's conduct still," delete the word "Nonetheless" at the beginning of the sentence so the sentence reads:

> Korpi's conduct still may subject him to liability if Collier can meet her burden on the second stage of the anti-SLAPP analysis.

6. On page 5, the third sentence of the first full paragraph, beginning with "Whenever a person typed," insert quotation marks around the terms "www.juliecollier.com" and "www.parentsadvocateleague.com" so the sentence reads:

> Whenever a person typed in or clicked on a link to the domain names "www.juliecollier.com" or "www.parentsadvocateleague.com," the person was instantly redirected to Pritchard's campaign Web site or Children First's Web site.

7. On page 5, the fourth sentence of the first full paragraph, beginning with "Korpi did so to increase," replace the word "so" with the word "this," and replace the words "number of hits for these latter Web sites" with the words "latter's Web site traffic" so the sentence reads:

> Korpi did this to increase the latter's Web site traffic, and to ensure people conducting searches using Collier's name or Parents Advocate League's name would be directed to Web sites containing information about the candidates Korpi supported.

8. On page 6, the first full sentence of the partial paragraph at the top of the page, beginning with "The trial court denied the motion because," delete the words "and therefore the anti-SLAPP statute did not apply" so the sentence reads:

> The trial court denied the motion because it concluded Collier's claims did not arise from First Amendment activity.

9. On page 9, the first full sentence of the partial paragraph at the top of the page, beginning with "Accordingly, this category extends the protection," replace the words "merely conduct that constitutes speech" with the words "actual instances of free speech" so the sentence reads:

> Accordingly, this category extends the protection of the anti-SLAPP statute beyond actual instances of free speech to "all conduct *in furtherance* of the exercise of the right of free speech in connection with a public issue."

3

10. On page 11, the first sentence of the first full paragraph, beginning with "Here, Collier does not base her claims," replace the words "of any Web site" with the words "found on the Web sites" so the sentence reads:

> Here, Collier does not base her claims on the content of any statement Korpi made or the content found on the Web sites to which he redirected Internet users.

11. On page 11, the second sentence of the first full paragraph, beginning with "Rather, the gravamen of Collier's claims," delete the words "for the District's Board" so the sentence reads:

> Rather, the gravamen of Collier's claims is that Korpi registered Collier's and Parents Advocate League's names as domain names, and then used those domain names to redirect Internet users seeking information about Collier or Parents Advocate League to Web sites endorsing and discussing candidates that Collier and Parents Advocate League did *not* support.

12. On page 11, the third sentence of the first full paragraph, beginning with "The foregoing cases nonetheless compel," delete the words "the acts" between the words "because" and "assisted," and replace them with the words "the registration of domain names" so the sentence reads:

> The foregoing cases nonetheless compel the conclusion the acts on which Collier bases her claims constitute protected activity under the anti-SLAPP statute because the registration of domain names assisted Korpi in the exercise of his free speech rights.

13. On page 11, the fourth sentence of the first full paragraph, beginning with "Thus, the acts do not have to constitute speech," delete the word "Thus" at the beginning of the sentence, replace the words "do not have to" with the words "need not," and replace the words "assist in" with the word "facilitate" so the sentence reads:

4

The acts need not constitute speech; they merely need to help advance or facilitate the exercise of free speech rights.

14. On page 11, the second sentence of the second full paragraph, beginning with "To the extent redirecting Internet traffic to other Web sites," replace the words "wished to convey about the" with the words "sought to disseminate about" so the sentence reads:

> To the extent redirecting Internet traffic to other Web sites was not itself speech, it was conduct that assisted Korpi in exercising his free speech rights because it directed the public to the information Korpi sought to disseminate about candidates in the 2012 election.

15. On page 11, the fourth sentence of the second full paragraph, beginning with "Distributing the flyer or mailer constitutes speech," delete the words "the act of printing the flyer or mailer furthers that speech because," insert the words "first printing" between the words "occur without" and "the flyer or mailer," and delete the words "first being printed" at the end of the sentence so the sentence reads:

> Distributing the flyer or mailer constitutes speech, but the speech could not occur without first printing the flyer or mailer.

16. On pages 11 and 12, the sentence that starts on the bottom of page 11 and continues on the top of page 12, beginning with "Here, Korpi's political speech about the candidates," insert the word "away" between the words "Internet traffic" and "from those domain names" so the sentence reads:

> Here, Korpi's political speech about the candidates he, Collier, and Parents Advocate League support could not have occurred without Korpi registering the domain names and redirecting Internet traffic away from those domain names.

5

17.    On page 12, the third sentence of the first full paragraph, beginning with "Collier, however, confuses the threshold question," replace the word "confuses" with the word "conflates" so the sentence reads:

> Collier, however, conflates the threshold question of whether her claims are based on protected activity and the question whether she has established a probability of prevailing on the merits.

18.    On page 13, the first sentence of the first paragraph, beginning with "The lone exception to this rule," replace the words "is where" with the words "occurs when," and delete the words "the acts on which the plaintiff bases his or her claims are illegal" so the sentence reads:

> The lone exception to this rule occurs when the defendant concedes or the evidence conclusively establishes the defendant's conduct is illegal as a matter of law.

19.    On page 13, inside the bracket statement following the citation to *U.S. v. Alvarez* (2012) 567 U.S. __, in the second paragraph on the page, insert the word "unprotected" between the words "categories of" and "speech," and delete the words "First Amendment does not protect" so the bracketed statement reads:

> [categories of unprotected speech include speech intended to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, so-called "'fighting words,'" child pornography, fraud, true threats, and speech presenting some grave and imminent threat government has power to prevent]

20.    On page 13, the first sentence of the third paragraph, beginning with "In *Flatley*, the Supreme Court declared," delete the word "acts" between the words "declared" and "that are illegal" and replace it with the words "speech or petitioning activities," and delete the words "and a defendant who commits such acts therefore

cannot invoke the statute's protections even though his or her acts were otherwise speech or petition activities" so the sentence reads:

In *Flatley*, the Supreme Court declared speech or petitioning activities that are illegal as a matter of law are not protected by the anti-SLAPP statute.

21. On page 14, the first sentence of the second full paragraph, beginning with "Here, Collier contends Korpi may not invoke," delete the words "was illegal as a matter of law because it" and insert "and therefore was illegal as a matter of law" at the end of the sentence so the sentence reads:

Here, Collier contends Korpi may not invoke the anti-SLAPP statute's protections because his conduct violated three separate statutes and therefore was illegal as a matter of law.

22. On page 14, the second sentence of the second full paragraph, beginning with "None of these statutes, however," replace the words "on the facts of this case" with the words "as a matter of law" so the sentence reads:

None of these statutes, however, deprive Korpi of the anti-SLAPP statute's protections as a matter of law.

23. On page 14, the first sentence of footnote 6, beginning with "The statute uses the word personate," replace the words "mean the same thing" with the words "share the same meaning" so the sentence reads:

The statute uses the word personate rather than impersonate, but the two words share the same meaning and the cases discussing the statute typically use the word impersonate because it is the more common term.

24. On page 16, the fifth sentence of the partial paragraph at the top of the page, beginning with "The address bar for the person's Internet browser," insert the words "resulting Internet browser" between the words "The" and "address bar" at the beginning of the sentence, and replace the words "for the person's Internet browser stated

7

the person was viewing" with the words "informed the viewer he or she was visiting" so the sentence reads:

> The resulting Internet browser address bar informed the viewer he or she was visiting Pritchard's or Children First's Web site.

25. On page 16, the sixth sentence of the partial paragraph at the top of the page, beginning with "Nothing on those Web sites," replace the word "represented" with the word "claimed" so the sentence reads:

> Nothing on those Web sites stated they belonged to Collier or claimed Collier endorsed any view espoused on those pages.

26. On page 16, the final sentence of the partial paragraph at the top of the page, beginning with "Accordingly, there is no conclusive evidence establishing Korpi violated," delete the words "as the *Flatley* exclusion from the anti-SLAPP statute requires" at the end of the sentence so the sentence reads:

> Accordingly, there is no conclusive evidence establishing Korpi violated Penal Code section 529 as a matter of law.

27. On pages 16 and 17, the sentence that starts on the bottom of page 16 and continues on page 17, beginning with "As explained above, however, the *Flatley* exception denies," delete the words "as a matter of law" at the end of the sentence so the sentence reads:

> As explained above, however, the *Flatley* exception denies the anti-SLAPP statute's protections to otherwise protected activities only when the evidence conclusively establishes the defendant's conduct is illegal.

28. On page 17, the second sentence of the partial paragraph at the top of the page, beginning with "Instead, he declares he engaged in this conduct," delete the words "of the credentials" so the sentence reads:

> Instead, he declares he engaged in this conduct to increase awareness of the candidates he supported.

29. On page 17, the second sentence of the second full paragraph, beginning with "We therefore remand for the trial court," delete the words "in the first instance" at the end of the sentence so the sentence reads:

We therefore remand for the trial court to conduct that analysis.

30. On page 19, the first full sentence at the top of the page, beginning with "We think it best," replace the words "the matter in the first instance" with the words "the issue" so the sentence reads:

We think it best that the able and experienced trial judge decide the issue.

These modifications do not change the judgment.

Appellant Patrick Harris, Executor of the Estate of Chris Wayne Korpi, has requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.


9