Filed 8/24/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CONSTANCE ILOH, | |
|    Plaintiff and Respondent, | G061238 |
|       v. | (Super. Ct. No. 30-2021-01197536) |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | O P I N I O N |
|    Defendant; | |
| THE CENTER FOR SCIENTIFIC INTEGRITY, | |
|    Real Party in Interest and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Nancy E. Zeltzer, Judge. Reversed and remanded with directions.

Law Offices of Kelly Aviles, Kelly Aviles and Shaila Nathu for Real Party in Interest and Appellant.

Tabah Law and Elvin I. Tabah for Plaintiff and Respondent.

\* \* \*

This is our second opinion in this case. The Center for Scientific Integrity (CSI) is an organization that reports on academic retractions and accountability. CSI wrote an article about Constance Iloh, a professor at the University of California, Irvine (UCI), after several academic journals retracted articles Iloh had written due to concerns about possible plagiarism or inaccurate citation references. In a follow-up to that article, CSI sent UCI a records request under the California Public Records Act (CPRA) (Gov. Code, § 7920.000 et seq.), requesting Iloh's postpublication communications with the journals and UCI.

Iloh filed a petition for writ of mandate, declaratory relief, and injunctive relief against UCI to prevent disclosure of her communications, and later added CSI as a real party in interest. She then filed a motion for preliminary injunction to prevent disclosure. Meanwhile, CSI filed a motion to strike Iloh's petition under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16 (§ 425.16)).

Our first opinion in this case concerned Iloh's motion for preliminary injunction. The trial court denied that motion on the grounds that Iloh had not established a likelihood of prevailing on the merits, and we affirmed that order. (*Iloh v. Regents of University of California* (2023) 87 Cal.App.5th 513 (*Iloh I*).)

We now consider CSI's anti-SLAPP motion. The trial court denied the motion, finding that although protected activity may have led to the petition, it was not the "basis" for the petition. We disagree. In issuing the CPRA request, CSI was engaging in newsgathering so it could report on matters of public interest, such as how a public university funded largely by taxpayer dollars resolves quality or integrity problems in its professors' publications. CSI was therefore engaged in protected activity when it issued the CPRA request.

Iloh filed her petition for writ of mandate to prevent UCI from complying with CSI's CPRA request. By targeting and seeking to impede CSI's newsgathering activity, Iloh's petition threatens to chill CSI's speech-related processes like newsgathering; if successful, this could inhibit CSI's exercise of free speech. This is the type of lawsuit the anti-SLAPP statute is designed to address, and it should be stricken if Iloh cannot demonstrate a probability of prevailing on her petition.

The trial court has not yet performed prong two of the anti-SLAPP analysis, which involves determining whether Iloh has established a probability of prevailing on her claims. We decline to consider that question in the first instance. Instead, we reverse the order denying CSI's anti-SLAPP motion under prong one of the anti-SLAPP statute and remand this matter with directions that the trial court consider prong two of the anti-SLAPP statute.

**FACTS**

As detailed in *Iloh I, supra,* 87 Cal.App.5th 513, "Iloh has a Ph.D. in urban education policy. She was employed at [UCI] from 2015 to 2021, first as a postdoctoral fellow, and then as an assistant professor in UCI's school of education. . . .

"During her time as a UCI professor, Iloh published research articles on education in a variety of academic journals. At issue here are four [of those] articles published in journals unaffiliated with UCI: (1) *Paving effective community college pathways by recognizing the Latino post-traditional student* (2018) in the Journal of Latinos and Education; (2) *Not non-traditional, the new normal: adult learners and the role of student affairs in supporting older college students* (2017-2018) in Colorado State University's Journal of Student Affairs; (3) *Toward a new model of college "choice" for a Twenty-First-Century context* (2018) in the Harvard Educational Review; and (4) *Does distance education go the distance for adult learners? Evidence from a qualitative study*

3

*at an American community college* (2018) in the Journal of Adult and Continuing Education." (*Iloh I, supra,* 87 Cal.App.5th at p. 519.)

"After the articles were published, an anonymous source reportedly e-mailed the four journals and demanded the articles be retracted. [A]ll four articles were [then] either retracted or corrected by the journals in which they were published: the Journal of Latinos and Education retracted Iloh's article in full; the Journal of Student Affairs removed Iloh's article and the entire issue in which it was published; the Harvard Educational Review issued an errata statement; and the Journal of Adult and Continuing Education issued a correction." (*Iloh I, supra,* 87 Cal.App.5th at p. 520.) It seems the retractions were related to concerns about possible plagiarism or inaccurate citation references in Iloh's articles.[1]

"The retractions caught the attention of Retraction Watch, an editorially independent organization that maintains a database of article retractions in scientific journals, covers incidents of particular note, and reports on academic publishing, transparency, and accountability. Retraction Watch is published by [CSI], a nonprofit public benefit corporation whose mission is 'to promote transparency and integrity in science and scientific publishing, and to disseminate best practices and increase efficiency in science.'

---

[1]    "[T]he Journal of Latinos and Education's retraction explained Iloh's article 'contain[ed] a substantial amount of text overlap with [various] sources, which were either inaccurately referenced or not referenced within the article.' [T]he Harvard Educational Review's errata statement cited 'multiple instances in which the author incompletely attributed previously published material in the introduction and literature review.' And the Journal of Adult and Continuing Education's correction explained that '[s]ections throughout the original manuscript have been rewritten and updated and this manuscript also includes new references.'" (*Iloh I, supra,* 87 Cal.App.5th at p. 520.)

We have not reviewed the contested materials because they are not part of our record. We therefore render no opinion as to whether Iloh actually committed plagiarism or otherwise violated university policy.

"In August 2020, Retraction Watch published an article about Iloh's papers; the article reported the papers had been 'retracted and corrected, for plagiarism and misuse of references.' The following month, to further its investigation, Retraction Watch sent a CPRA records request to UCI seeking all correspondence from January 2019 onward (1) between UCI and Iloh regarding articles published in the four journals, and (2) between UCI or Iloh and the four journals regarding articles authored by Iloh.

"UCI notified Iloh of the CPRA request and its intent to disclose the responsive records. Iloh responded that the requested records fell outside the scope of the CPRA and argued the request violated her privacy rights. UCI agreed to remove a few records from its production, but maintained it would disclose the remaining records absent a court order.

"In April 2021, Iloh filed a verified petition against UCI and the Regents of the University of California (the Regents) for writ of mandate, declaratory relief, and injunctive relief to prevent disclosure." (*Iloh I, supra,* 87 Cal.App.5th at pp. 520-521.) Shortly thereafter, Iloh apparently left her position at UCI.

"In July 2021, Iloh filed an amended petition adding CSI as a real party in interest and removing UCI as a respondent. She then filed a motion for preliminary injunction enjoining the Regents from disclosing the requested records to CSI." (*Iloh I, supra,* 87 Cal.App.5th at p. 521.) "The trial court denied Iloh's motion for preliminary injunction, finding Iloh had not established a likelihood of prevailing on the merits because she had failed to demonstrate the requested records were not 'public records' under the CPRA, nor had she established the records were otherwise exempt from disclosure." (*Id.* at pp. 520-521.) Iloh appealed that order; this court affirmed the trial court's ruling.

While Iloh's appeal was still pending, CSI filed its anti-SLAPP motion, which asserted Iloh's petition should be stricken because it "arises from acts in

furtherance of [CSI's] rights of petition and free speech in connection with a public issue, and [because] Iloh cannot demonstrate a probability of prevailing."

The trial court denied CSI's motion, finding that Iloh's claims do not *arise from* protected activity. According to the court, CSI's protected activity of newsgathering may have led to or been incidental to the conduct being challenged (i.e., the disclosure of the records), but it was not the *basis* of Iloh's claims. CSI appeals that order.

## DISCUSSION

### 1. *The Anti-SLAPP Statute*

The Legislature enacted the anti-SLAPP statute in 1992 to address "what are commonly known as SLAPP suits (strategic lawsuits against public participation)— litigation of a harassing nature, brought to challenge the exercise of protected free speech rights." (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.) The statute authorizes a special motion to strike meritless claims early in the litigation if the claims "aris[e] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ." (§ 425.16, subd. (b)(1).) The statute is "'intended to resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest.'" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619.)

When evaluating a special motion to strike, the trial court must engage in a two-step analysis. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "Only a cause of action

that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. . . . If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

We review a trial court's order denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).) The statute requires us to "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) We therefore consider not only the complaint, but also the declarations filed in support of and in opposition to the anti-SLAPP motion. We do not weigh the credibility of that evidence, and we """"accept as true the evidence favorable to the plaintiff[s].""""" (*Flatley,* at p. 326.)

2.      *Applicability to Real Parties in Interest*

As a threshold matter, we must address whether CSI, as a real party in interest, may pursue anti-SLAPP relief. Iloh argues an anti-SLAPP motion is not available to CSI because it is not a named defendant, and because Iloh's petition for writ of mandate does not assert any claims against it. (See § 425.16, subd. (b)(1) ["A cause of action against a person arising from [protected activity] shall be subject to a special motion to strike"].)

7

We disagree.  A real party in interest may bring an anti-SLAPP motion if it has a direct interest in the subject of the mandamus proceeding and will be impacted by the litigation's outcome.  (See *Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, 1073 (*Rudisill*) [where real parties in interest had a direct interest in the property that was the subject of the mandamus proceeding and might be subject to an attorney fee award if they participated in the litigation, "[i]t was reasonable for [them] to conclude that the [p]etition asserted claims against them"]; see, e.g., *Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 816, 824-826 [trial court should have granted anti-SLAPP motion filed by real parties in interest concerning petition for writ of mandate]; see also § 425.16, subd. (a) [anti-SLAPP statute "shall be construed broadly"].)

In this case, Iloh's petition for writ of mandate against the Regents seeks "to prevent the disclosure of" Iloh's correspondences to CSI and block the Regents from complying with CSI's CPRA request.  Because CSI's ability to access the requested documents under the CPRA is the focus of this lawsuit, CSI has a direct interest in the proceedings and may seek anti-SLAPP relief.

3.  *Prong One:  Protected Activity*

That brings us to prong one of the anti-SLAPP analysis.  In this step, we must decide whether CSI made a threshold showing that Iloh's claims arise from an act in furtherance of CSI's right of petition or free speech in connection with a public issue.  (§ 425.16, subd. (b)(1).)  That is, did CSI establish the complaint arises from protected activity?

As is relevant here, the anti-SLAPP statute defines protected activity to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (§ 425.16, subd. (e)(3)), and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (*id.*, subd. (e)(4)).  "[T]he 'in furtherance' requirement of section 425.16,

8

subdivision (e)(4), may be satisfied by conduct preliminary to a completed exercise of the right of free speech." (*Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1042 (*Ojjeh*).)

It is well established that reporting the news involves protected activity. (*San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 101 (*San Diegans*).) Iloh's counsel conceded as much during oral argument.

Because newsgathering is part and parcel of that protected activity, newsgathering likewise constitutes protected activity. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 713 [authors and publishers who conducted investigation about validity of scholarly article were "unquestionably" engaged in conduct in furtherance of their right of free speech]; *San Diegans,* 13 Cal.App.5th at p. 101 [newsgathering and other related conduct undertaken in furtherance of the news media's right to free speech is protected activity]; *Lieberman v. KCOP Television, Inc*. (2003) 110 Cal.App.4th 156, 166 [same]; *Blue v. Office of Inspector General* (2018) 23 Cal.App.5th 138, 153 ["information gathering preparatory to the publishing of" Inspector General's report was protected activity].)

The CPRA request at the center of this lawsuit was issued as part of CSI's newsgathering efforts and in furtherance of its reporting on the four article retractions. As noted, CSI is a nonprofit public benefit corporation that promotes transparency and integrity in scientific publishing; through Retraction Watch it reports on academic article retractions and accountability. After four different academic journals retracted Iloh's articles, Retraction Watch published an article on those retractions. A month later, to further its investigation of Iloh's articles, Retraction Watch sent the CPRA records request to UCI seeking certain postpublication communications between Iloh, UCI, and the journals. Because CSI issued the CPRA records request as part of its newsgathering efforts, the records request qualifies as protected activity.

Further, the documents sought in the CPRA records request concerned "an issue of public interest." As we noted in our previous opinion, "There is a strong public

9

interest in knowing how a public university funded largely by taxpayer dollars handles and resolves quality or integrity problems in its professors' publications" because "(1) public funds are used both to pay UCI assistant professors like Iloh and also to investigate alleged academic dishonesty, (2) academic research culminating in publication is central to UCI's public function and within Iloh's job duties, and (3) the public has an interest in understanding how UCI addresses allegations of academic dishonesty." (*Iloh I, supra,* 87 Cal.App.5th at p. 526.)

CSI issued its CPRA records request as part of its newsgathering efforts. CSI was therefore engaged in protected activity under the anti-SLAPP statute when it issued the CPRA request.

But our prong one analysis does not end there. Even if a lawsuit involves protected activity, it does not automatically follow that all claims associated with that activity must be stricken under the anti-SLAPP statute. To qualify for anti-SLAPP protection, the moving party must also demonstrate that the challenged claims "aris[e] from" protected activity. (§ 425.16, subd. (b)(1).)

Our Supreme Court has addressed what "nexus . . . a defendant [must] show between a challenged claim and the defendant's protected activity" to meet the "arising from" requirement. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.) "[A] claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid.*) This requires courts to "'distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity.'" (*Id.* at p. 1065.) "'[T]he mere fact that an action was filed after protected activity took place does not

10

mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Id.* at p. 1063.) Courts must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.) Courts must also "distinguish between the challenged decisions and the speech that . . . thereafter expresses them." (*Id.* at p. 1067.)

Thus, for a moving party to meet the "arising from" burden, "it is not enough to establish that the action was filed in response to or in retaliation for a party's exercise of the right to petition." (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 804 (*Bergstein*).) The fact a cause of action "may have been triggered by protected activity" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cashman*)), or the "fact that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 478), does not mean the alleged SLAPP *arises from* protected activity.

Instead, "the claim must be *based on* the protected petitioning activity." (*Bergstein, supra,* 236 Cal.App.4th at p. 804; see *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1215.) In evaluating whether that requirement is met, courts consider "the *principal thrust* or *gravamen* of a plaintiff's cause of action" (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519-520) and determine whether the acts underlying that cause of action were acts "in furtherance of the right of petition or free speech" (*Cashman, supra*, 29 Cal.4th at p. 78).

The trial court concluded the required nexus was lacking here, and for that reason denied CSI's motion. We disagree. The entire purpose of Iloh's petition is to prevent the disclosure of records in response to CSI's CPRA request. The propriety of the CPRA request is the very crux of the petition; without the CPRA request, there would be no petition. Indeed, the opening paragraphs of Iloh's verified amended petition

11

repeatedly aver that the petition seeks "to prevent the disclosure of any records" under the CPRA. The petition therefore "aris[es] from" the CPRA records request. (See § 425.16, subd. (b)(1).)

Iloh insists her petition does not arise from protected activity because it is not predicated on wrongful disclosure and does not seek any damages from CSI. We are not persuaded. The fact that the petition seeks to enjoin future conduct does not render the anti-SLAPP statute inapplicable. (*Rudisill, supra,* 35 Cal.App.5th at p. 1071 [anti-SLAPP statute applies not only to complaints for damages, but also to writ petitions seeking a court order]; see *Ojjeh, supra,* 43 Cal.App.5th at p. 1041 [anti-SLAPP "protection may be afforded to preliminary actions that assist or are helpful in advancing the exercise of the right of free speech, even if the speech activity is still formative or incomplete at the time a lawsuit is filed"].) We see "no reason why newsgathering activity and other actions contributing to a broadcast report should be less deserving of anti-SLAPP protection than the broadcast report itself. Indeed, a lawsuit targeting newsgathering activity threatens to chill participation in speech-related processes and, if successful, may block the exercise of free speech." (*Id.* at p. 1042.)

Iloh alternatively argues that striking her petition under the anti-SLAPP statute would lead to an "absurdity" because her petition is a "reverse-CPRA action" that is explicitly authorized by case law. (See *Amgen Inc. v. Health Care Services* (2020) 47 Cal.App.5th 716, 732 [an interested third party who desires to prevent a public agency from disclosing records under the CPRA may bring an independent action for declaratory relief or traditional mandamus]; *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250, 1266-1267 [similar].) According to Iloh, it would be wrong for us to hold that she has violated the law by filing an action that is permitted by these cases.

Again, we are not persuaded. Our holding does not mean that a third party may never file a reverse-CPRA action to prevent a public agency from disclosing

records; it means only that such an action may be stricken under the anti-SLAPP statute if the petitioner cannot establish a likelihood of prevailing under prong two of the anti-SLAPP analysis.

4.    *Prong Two: Probability of Prevailing*

Because the trial court found Iloh's claims did not arise from protected activity, it did not perform the prong two analysis required to determine whether Iloh established a probability of prevailing on her claims. We remand the matter for the trial court to resolve that question in the first instance. (See *Collier v. Harris* (2015) 240 Cal.App.4th 41, 58.)

## DISPOSITION

The trial court's order denying CSI's special motion to strike is reversed. On remand, the court is directed to engage in prong two of the anti-SLAPP statute analysis. CSI shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


                                    GOETHALS, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.