Filed 4/8/19 (unmodified opinion and publication order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SONOMA MEDIA INVESTMENTS, LLC et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF SONOMA COUNTY, <br><br> Respondent; <br><br> SCOTT FLATER, <br><br> Real Party in Interest. | A151968 <br><br> (Sonoma County Super. Ct. No. SCV-259927) |
| WILLIAM GALLAHER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SONOMA MEDIA INVESTMENTS, LLC et al., <br><br> Defendants and Appellants; <br><br> DAVID MCCUAN, <br><br> Defendant. | A152008 <br><br> (Sonoma County Super. Ct. No. SCV-259927) |
| WILLIAM GALLAHER et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> DAVID MCCUAN, <br><br> Defendant and Appellant; <br><br> SONOMA MEDIA INVESTMENTS, LLC et al., <br><br> Defendants. | A152320 <br> **MODIFICATION OF PUBLICATION ORDER** <br> **[NO CHANGE IN JUDGMENT]** <br><br> (Sonoma County Super. Ct. No. SCV-259927) |

THE COURT:

This court's order of April 8, 2019, publishing the opinion in these consolidated cases, is hereby modified to read as follows:

For good cause it now appears that the opinion should be published in the Official Reports in its entirety.

There is no change in the judgment.

Dated: _____          _____, P. J.

Superior Court of Sonoma County, No. SCV-259927, Hon. Peter K. Ottenweller, Judge.

Davis Wright Tremaine, Thomas R. Burke, Rochelle L. Wilcox and Diana Palacios for Petitioners and for Defendants and Appellants Sonoma Media Investments, LLC, The Press Democrat and Kevin McCallum.

Cannata, O'Toole, Fickes & Almazan and Karl Olson for Defendant and Appellant David McCuan.

Perry, Johnson, Anderson, Miller & Moskowitz, Deborah S. Bull, Michael G. Miller; Towle Dennison & Maniscalco and Michael C. Denison for Real Party in Interest, for Plaintiffs and Appellants and for Plaintiffs and Respondents.

No appearance for Respondent Superior Court.

Filed 4/8/19 (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SONOMA MEDIA INVESTMENTS, LLC et al.,<br><br>     Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SONOMA COUNTY,<br><br>     Respondent;<br><br>SCOTT FLATER,<br><br>     Real Party in Interest. | A151968<br><br>(Sonoma County<br>Super. Ct. No. SCV-259927) |
| WILLIAM GALLAHER et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>SONOMA MEDIA INVESTMENTS, LLC et al.,<br><br>     Defendants and Appellants;<br><br>DAVID MCCUAN,<br><br>     Defendant. | A152008<br><br>(Sonoma County<br>Super. Ct. No. SCV-259927) |
| WILLIAM GALLAHER et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>DAVID MCCUAN, | A152320<br><br>(Sonoma County<br>Super. Ct. No. SCV-259927) |

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.

Defendant and Appellant;

SONOMA MEDIA INVESTMENTS,
LLC et al.,

Defendants.

THE COURT:

The opinion in the above-entitled matter, filed on March 15, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion, with the exception of Parts II and III, should be published in the Official Reports.

There is no change in the judgment.

Dated: _____        _____, P. J.

Superior Court of Sonoma County, No. SCV-259927, Hon. Peter K. Ottenweller, Judge.

Davis Wright Tremaine, Thomas R. Burke, Rochelle L. Wilcox and Diana Palacios for Petitioners and for Defendants and Appellants Sonoma Media Investments, LLC, The Press Democrat and Kevin McCallum.

Cannata, O'Toole, Fickes & Almazan and Karl Olson for Defendant and Appellant David McCuan.

Perry, Johnson, Anderson, Miller & Moskowitz, Deborah S. Bull, Michael G. Miller; Towle Dennison & Maniscalco and Michael C. Denison for Real Party in Interest, for Plaintiffs and Appellants and for Plaintiffs and Respondents.

No appearance for Respondent Superior Court.

Filed 3/15/19; ordered published 4/8/19 (pub. order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SONOMA MEDIA INVESTMENTS, LLC et al., Petitioners, v. THE SUPERIOR COURT OF SONOMA COUNTY, Respondent; SCOTT FLATER, Real Party in Interest. | A151968 (Sonoma County Super. Ct. No. SCV-259927) |
| WILLIAM GALLAHER et al., Plaintiffs and Appellants, v. SONOMA MEDIA INVESTMENTS, LLC et al., Defendants and Appellants; DAVID MCCUAN, Defendant. | A152008 (Sonoma County Super. Ct. No. SCV-259927) |
| WILLIAM GALLAHER et al., Plaintiffs and Respondents, v. DAVID MCCUAN, Defendant and Appellant; SONOMA MEDIA INVESTMENTS, | A152320 (Sonoma County Super. Ct. No. SCV-259927) |

1

LLC et al.,

      Defendants.

       Plaintiff William Gallaher is a real estate developer in Santa Rosa.  During the 2016 Santa Rosa City Council election, defendant The Press Democrat published a series of five articles about substantial independent election expenditures made by Gallaher's son-in-law, plaintiff Scott Flater, on behalf of three City Council candidates.  Plaintiffs allege the articles falsely implied that Gallaher was the source of the funds spent by Flater during the 2016 election.  Plaintiffs brought suit against The Press Democrat, Sonoma Media Investments, LLC (the owner of the newspaper), Kevin McCallum (the author of the articles),[1] and David McCuan (a professor quoted in one of the articles), asserting causes of action for defamation, libel per se, and false light invasion of privacy. Defendants moved to strike the complaint pursuant to the anti-SLAPP statute,[2] section 425.16 of the Code of Civil Procedure (Section 425.16).

       The trial court granted the motion in part, denied the motion in part, and continued the motion in part to permit plaintiffs to conduct discovery on the issue of whether defendants acted with malice as to their statements regarding Flater.  Defendants appealed, plaintiffs cross-appealed, and the media defendants petitioned for writ relief from the discovery order.  We conclude the trial court should have granted defendants' Section 425.16 in full because plaintiffs failed to make a prima facie showing the allegedly defamatory statements in the articles were false.

BACKGROUND

      Between October 20 and November 11, 2016, defendant newspaper The Press Democrat (owned by defendant Sonoma Media) published five articles written by defendant McCallum.  The articles reported on a large amount of spending by plaintiff

---

[1] We refer to defendants Sonoma Media Investments, LLP (Sonoma Media), The Press Democrat, and Kevin McCallum jointly as the "media defendants."

[2] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

2

Flater on behalf of three candidates for the Santa Rosa City Council during the 2016 election. Defendant McCuan is a Sonoma State University political science professor quoted in the October 28 article. Plaintiffs allege the articles were defamatory because they implied that plaintiff Gallaher, a prominent local developer, was the source of the funds spent by Flater, his son-in-law.

The Press Democrat Articles

The first article, dated October 20, 2016, was entitled "Campaign finance gaps allow large donations in Santa Rosa council race." The article reported that candidates were "getting a big bump from big money interests this election." In addition to $75,000 raised by "[a]n independent anti-rent-control group," the article explained that "Scott Flater, the son-in-law of politically active developer Bill Gallaher, recently reported spending nearly $40,000 to help support two other candidates . . . . [¶] While he didn't give the money directly to either candidate, the contributions raise questions about whether Flater or people close to him are exploiting gaps between state and city campaign finance laws that limit individual campaign contributions to $500 each but allow 'major donors,' such as Flater, to spend unlimited sums." The article quoted concerns expressed by one of the candidates about such independent expenditures, and the article reported that Flater had "fail[ed] to file required campaign disclosure documents on time," which Flater's political consultant described as an "oversight." The City Clerk was cited for the proposition that "[t]here is nothing illegal about Flater spending his own money in favor of candidates he supports, as long as he isn't giving money directly to the campaigns or accepting donations from others."

The October 20, 2016 article described plaintiffs as follows: "Flater, 40, is married to Gallaher's daughter Molly, vice president of asset management for Gallaher's company Oakmont Senior Living. Gallaher is one of the city's most successful developers, having built hundreds of homes in Oakmont, as well as luxury senior living facilities . . . . He also owns a large property in east Santa Rosa on Elnoka Lane that he's been trying to develop for over a decade." Flater's political consultant said "he believes Flater is spending his own funds in support of candidates but acknowledged he didn't

3

know if the funds originated from his developer father-in-law. [¶] 'I don't believe that's true,' [the consultant] said, adding he thought it 'highly unlikely.' "

An October 28, 2016 article was entitled "Santa Rosa City Council candidates benefit from unprecedented spending." The article commenced, "An unprecedented amount of outside money continues to flow into the Santa Rosa City Council race, raising questions about the people behind the last-minute campaign spending spree and their motivations. [¶] Scott Flater, son-in-law of politically active Santa Rosa developer Bill Gallaher, filed new campaign finance disclosures this week indicating that he has spent $130,375 to date to support three candidates . . . among the field of six vying for four council seats." The article noted that, including spending by an anti-rent control group, "the amount of outside money pouring into the local City Council race appears to have smashed all previous records." It continued, "The new disclosures brought a fresh round of denunciations from candidates that argued that the unlimited spending by wealthy individuals and outside groups was having a corrosive effect on local politics."

The October 28, 2016 article distinguished between direct campaign contributions and independent expenditures and reported that plaintiffs and their spouses had each given $500 to one of the candidate's campaigns. Flater's profession was listed as "homemaker" in the donation record. The candidate described the donations as being part of a "bundle," and defendant McCuan was reported as commenting, "That . . . is a pattern Gallaher has of 'sprinkling money around' to family members to maximize payments to — and potentially influence with — council candidates. [¶] "Bill Gallaher uses his family as a shell game, and has for a long time, in order to channel support to candidates of his liking. . . . It sounds to me what they have done is against the letter and the intent of the law." Flater and Gallaher could not be reached for comment, but Flater's political consultant was quoted as saying, " 'I believe that Scott Flater is acting independently with his own money in these races. . . . I pretty much know for sure.' " The consultant also observed that Gallaher was "found to be 'clean' when he was investigated . . . for allegations that he violated campaign finance rules in a previous local election."

4

An October 29, 2016 article was entitled "Outside money breaks record."  Aside from the title, it is identical to the October 28 article.[3]

A November 5, 2016 article was entitled "Complaint filed against big spender in Santa Rosa City Council race."  The article commenced, "A Santa Rosa contractor has filed a complaint with the state political watchdog alleging that the son-in-law of a prominent Sonoma County developer has violated campaign finance laws with his role in the unprecedented influx of outside cash flowing into this year's Santa Rosa City Council race."  The complainant was quoted as saying "he 'strongly suspects' that the record spending by Scott Flater is fueled by money that has been 'laundered and bundled' by others. [¶] 'I think this is an attempt to avoid transparency . . . . It's very hard to judge what the economic interests behind this are, which is the whole point of the disclosure requirements.' "  The complainant was also reported to say that "Flater's late spending spree . . . has telltale signs of someone who has agreed to act as a front man for other[] donors, allowing them to shield their political contributions and potential economic interests in the race from public view."  The article quoted the chairman of the Sonoma County Democratic Party as saying the spending "raises the question as to whether all the money is actually being put in by Scott Flater or by someone else."

The November 5, 2016 article noted Flater's relationship to Gallaher and that Flater had spent "nearly $192,000 on mailers and canvassing in support of three of the six candidates for City Council."  That spending "accounts for more than a third of the total in the race, including spending by candidates' campaigns."  The article observed, "The record-breaking infusion of private cash into the race has highlighted the inequity between the $500 limits Santa Rosa puts on individual contributions and the unlimited amounts state law allows donors and groups to spend on independent expenditures not associated with candidates' campaigns."  The article also reported that "Gallaher was cleared earlier this year of a similar complaint alleging" one of his companies " 'engaged

---

[3] The media defendants explain that the October 28, 2016 article was "published online . . . and then again in identical form in print on October 29."

5

in campaign money laundering by making contributions in the name of' " persons who received reimbursement from the company.

Finally, a November 11, 2016 article was entitled "Santa Rosa council members seek options to curb unlimited spending in future elections." The article made reference "to the $195,000 that campaign filings indicate was spent by Scott Flater, the son-in-law of prominent local developer and banker Bill Gallaher, who has a history of bundling political contributions from family and colleagues. [¶] Flater, a 40-year-old father of four children who listed himself as 'homemaker' in filings, is now the subject of a complaint to the State Fair Political Practices Commission alleging he's not the real source of the money."

Plaintiffs' Lawsuit and Defendants' Anti-SLAPP Motion

In December 2016, plaintiffs filed a complaint (Complaint) against Sonoma Media, The Press Democrat, Kevin McCallum, and David McCuan. The Complaint alleged causes of action for defamation, libel per se, and false light invasion of privacy. Referencing the articles described previously, plaintiffs alleged "Defendants made untrue statements regarding Mr. Flater's political contributions related to the 2016 Santa Rosa City Council election . . . including, but not limited to, that Mr. Flater was a 'front man' for Mr. Gallaher, that Mr. Gallaher provided the money that Mr. Flater used and that Mr. Gallaher uses his family as a 'shell game.' "

In February 2017, the media defendants moved to strike the complaint under Section 425.16. They argued plaintiffs' claims arose from their "conduct in furtherance of their exercise of the right of free speech in connection with issues of public interest," and plaintiffs could not demonstrate a probability of prevailing on their claims. Defendant McCuan joined in the motion.

In March 2017, plaintiffs moved for leave "to conduct limited discovery of Defendants on the subject of whether Defendants knew the statements made by their sources were false or in reckless disregard of whether the statements were false." Plaintiffs also filed their opposition to the anti-SLAPP motion.

In June 2017, the trial court ruled on the motion for discovery and the motion to strike. The court concluded plaintiffs' claims were covered by the anti-SLAPP law because they "solely arise from the Press Democrat's news reporting about Plaintiffs['] involvement in funding candidates in the 2016 election for Santa Rosa City Council, an official proceeding, in a public forum, involving a matter of indisputable public interest." The court then turned to whether plaintiffs had demonstrated a probability of prevailing on their claims. The court concluded that only statements in the October 28 and 29 articles were potentially actionable. Although there is no analysis in the body of the decision, the court stated at the outset of its decision that plaintiffs "did not comply with [their] retraction duties pursuant to Civil Code section 48a" as to the October 20 article. The court also concluded the November 5 and 11 articles did not contain actionable defamatory statements. As to plaintiffs' showing of falsity, the trial court stated in a conclusory fashion that, "According to the Gallaher and Flater declarations, Plaintiffs have met their burden that the statements and their implications are false."

The court concluded Flater was a limited purpose public figure and continued the motion to strike as to him to allow depositions of defendants McCallum and McCuan "only as to whether they reported on stated facts with ill-will or other improper motive as to" the October 28 and 29 articles. The court concluded Gallaher was *not* a limited purpose public figure, and, as we understand the decision, the court granted the motion to strike the defamation cause of action as to him except as to the October 28 and 29 articles.[4] The trial court granted the motion to strike the libel per se and false light causes of action as "duplicative" of the defamation claim.

The media defendants appealed and plaintiffs cross-appealed (A152008); defendant McCuan filed a separate appeal (A152320). This court consolidated the appeals for purposes of briefing, oral argument, and decision. In July 2017, the media defendants filed a petition in this court seeking issuance of a writ that would, among

---

[4] At the outset, the decision states the motion to strike is denied "except as to those allegations relating to the October 20, 2016 article." But that statement is inconsistent with the trial court's conclusion the November articles are not actionable.

7

other things, direct the trial court to vacate its order permitting plaintiffs to conduct discovery (A151968). This court issued an order to show cause, set a briefing schedule, and ordered the writ proceeding consolidated with the appeals and cross-appeal (A152008 and A152320) for purposes of oral argument and decision.

DISCUSSION

I. *The Anti–SLAPP Law*

"In 1992, the Legislature enacted [S]ection 425.16 in an effort to curtail lawsuits brought primarily 'to chill the valid exercise of . . . freedom of speech and petition for redress of grievances' and 'to encourage continued participation in matters of public significance.' (§ 425.16, subd. (a).) The section authorizes a special motion to strike '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States [Constitution] or [the] California Constitution in connection with a public issue . . . .' (§ 425.16, subd. (b)(1).) The goal is to eliminate meritless or retaliatory litigation at an early stage of the proceedings. [Citations.] The statute directs the trial court to grant the special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1395–1396, fn. omitted (*Gallimore*).)

"The statutory language establishes a two-part test. First, it must be determined whether the plaintiff's cause of action arose from acts by the defendant in furtherance of the defendant's right of petition or free speech in connection with a public issue. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in [S]ection 425.16, subdivision (e).' [Citation.] Assuming this threshold condition is satisfied, it must then be determined that the plaintiff has established a reasonable probability of success on his or her claims at trial." (*Gallimore*, *supra*, 102 Cal.App.4th at p. 1396.) "Whether [S]ection 425.16 applies and whether the plaintiff has shown a probability of prevailing are both legal questions which we review independently on appeal." (*Ibid.*)

8

II.     *Plaintiffs' Claims Arise Out of Protected Conduct*

All of the claims in the Complaint arise from the allegedly defamatory statements about Gallaher and Flater in five articles published by The Press Democrat between October 20 and November 11, 2016.  The trial court found the claims were encompassed by Section 425.16, subdivision (e)(3), which brings within the protection of the anti-SLAPP law "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest."

Plaintiffs argue the media defendants' newspaper and website were not public forums within the meaning of Section 425.16, subdivision (e)(3), because they did not "involve an element of [public] access to *participate* in the debate."  Plaintiffs rely on the California Supreme Court's decision in *Barrett v. Rosenthal* (2006) 40 Cal.4th 33, which stated that "Web sites accessible to the public, like 'news groups' where [the defendant] posted [the alleged defamatory] statement, are 'public forums' for purpose of the anti-SLAPP statute." (*Id*. at p. 41, fn. 4.)  Plaintiffs argue that access for public participation is necessary for news groups to be considered public forums.  However, the court of appeal in *Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, concluded that, under *Barrett*, "public *access,* not the right to public *comment,* is the hallmark of a public forum." (*Nygård*, at p. 1039.)  There, the court held that a magazine was a public forum, reasoning "a newspaper or magazine need not be an *open* forum to be a *public* forum—it is enough that it can be purchased and read by members of the public." (*Ibid.*)  We agree with *Nygård* on this point.

Further, even if the newspaper articles were not considered a public forum, it is clear the articles are encompassed by Section 425.16, subdivision (e)(4), which brings within the protection of the anti-SLAPP law "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  As explained in *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, that provision encompasses "even private communications, so long as they concern a public issue." (*Id.* at p. 897; see also *Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1015 (*Vogel*) [Section 425.16, subdivision (e)(4)

9

applies where "the conduct underlying the plaintiff's claims consists of pure speech"].)
On appeal, plaintiffs argue in passing that *Wilbanks* "blurs the distinction between (e)(3),
which applies to 'statements,' and (e)(4) which applies to 'conduct.' Under the
*Wilbanks*' analysis, there would be no need to have (e)(3) at all, since all statements
would be conduct and the 'public forum' prong would be written out of the anti-SLAPP
statute." Although it is true that subdivision (e)(4), as interpreted by *Wilbanks*,
encompasses all statements within the scope of subdivision (e)(3), plaintiffs present no
authority supporting a narrow construction of "conduct" in subdivision (e)(4), which
would be contrary to the Legislature's express directive that section 425.16 "shall be
construed broadly." (§ 426.16, subd. (a); see also *Nygård*, *supra*, 159 Cal.App.4th at pp.
1039–1042.) As the media defendants point out, plaintiffs' interpretation of subdivisions
(e)(3) and (e)(4) would exclude most newspaper reporting on issues of public interest
from the protection of the anti-SLAPP statute, despite the fact that "[n]ewspapers and
publishers, who regularly face libel litigation, were intended to be one of the ' "prime
beneficiaries" ' of the anti-SLAPP legislation." (*Paterno v. Superior Court* (2008) 163
Cal.App.4th 1342, 1353.) We reject plaintiffs' narrow interpretation of Section 425.16,
subdivision (e)(4).

Plaintiffs also argue the articles are unprotected by the anti-SLAPP statute,
whether under Section 425.16, subdivision (e)(3) or (e)(4), because they are not in
connection with an issue of public interest. The contention is essentially frivolous.
"California cases establish that generally, '[a] public issue is implicated if the subject of
the statement or activity underlying the claim (1) was a person or entity in the public eye;
(2) could affect large numbers of people beyond the direct participants; or (3) involved a
topic of widespread, public interest.' " (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190,
1226.)

It is beyond dispute that elections in general, and the financing of political
advertisements in particular, affect large numbers of people and are topics of widespread
interest. Although speculation about the source of a small amount of funds donated to or
spent on behalf of a candidate might not constitute an issue of public interest, plaintiffs

10

do not dispute the truth of the statement in the November 5 article that, as of that date, Flater had spent "nearly $192,000 on mailers and canvassing in support of three of the six candidates for City Council." Neither do plaintiffs dispute the truth of the statements in the October 28 article indicating that Flater's spending far exceeded the amounts raised by any of the candidates themselves.[5]

The Press Democrat articles reporting on Flater's enormous independent expenditures, explaining Flater's connection to Gallaher, and raising questions about the source of the funds spent by Flater were clearly in connection with an issue of public interest. As the United States Supreme Court explained in *Citizens United v. Federal Election Comm'n* (2010) 558 U.S. 310, 367 (*Citizens United*), " 'provid[ing] the electorate with information' about the sources of election-related spending . . . . help[s] citizens ' "make informed choices in the political marketplace." ' " (See also *id.* at p. 368 ["The First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages."].) In California, the Political Reform Act (PRA) requires, among other things, that "[r]eceipts and expenditures in election campaigns should be fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited." (Gov't Code § 81002, subd. (a); see also *Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 244.) In *Agua Caliente*, the California Supreme Court observed, "The State of California has determined that the PRA is vitally important to its republican form of government." (*Id.* at p. 260; see also *Griset v. Fair Political Practices Com.* (1994) 8 Cal.4th 851, 862 ["the state's interest in a well-informed electorate is a compelling one"].) Given the fundamental importance of the disclosure requirements, the media defendants' articles, which informed the voting public about Flater's spending and his connection to a

---

[5] The October 28 article stated that Flater had spent $130,375 as of that date, while the most any candidate had raised as of October 28 was $73,754, which was "far more than any of the other five candidates."

11

prominent developer with likely business before the City Council, were indisputably of public interest.

Plaintiffs are misplaced in arguing the media defendants' articles were required to be in connection to an ongoing controversy, because that requirement only applies where the issue is not of interest to the public at large. (*D.C. v. R.R.*, *supra*, 182 Cal.App.4th at p. 1226 ["where the issue is of interest to only a private group, organization, or community, the protected activity must occur in the context of an ongoing controversy, dispute, or discussion, such that its protection would encourage participation in matters of public significance"]; see also *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119.) For the same reason, plaintiffs are misplaced in arguing that the media defendants "elevate[d] a private dispute to a public one by . . . publicizing that dispute." The source of roughly $200,000 in spending during a city council election is inherently a matter of public interest. (Cf. *Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 936 [alleged theft by "celebrity stylist and style expert" not a matter of public interest]; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1127 [the defendant's "private campaign . . . to discredit [the] plaintiff in the eyes of a relatively small group of fellow collectors" not a matter of public interest].) Given the extent of Flater's spending during the 2016 Santa Rosa City Council election, we firmly reject in this case plaintiffs' assertion that "whether or not a specific individual made legal political contributions is a personal matter between that individual and the politician." (See *First National Bank of Boston v. Bellotti* (1978) 435 U.S. 765, 788–789 ["Preserving the integrity of the electoral process, preventing corruption, and 'sustain[ing] the active, alert responsibility of the individual citizen in a democracy for the wise conduct of government' are interests of the highest importance."].)

The trial court correctly concluded that plaintiffs' claims arise out of activity protected by the anti-SLAPP statute and plaintiffs were required to demonstrate a probability of prevailing on their claims.[6]

III.    *Plaintiffs Failed to Show a Probability of Prevailing on Their Claims*

Because plaintiffs' claims arise out of protected activity, they bore the burden of demonstrating " ' "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, 88 (*Navellier*).)  Plaintiffs' evidence must be "competent and admissible." (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236 (*Tuchscher*).)  "We do not weigh credibility, nor do we evaluate the weight of the evidence.  Instead, we accept as true all evidence favorable to [plaintiffs] and assess [defendants'] evidence only to determine if it defeats [plaintiffs'] submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699–700.)

"Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645.)  "[W]here disputed statements involve matters of public concern, the plaintiff in a defamation action bears the burden of showing the statements the defendant made were false." (*Melaleuca, Inc. v. Clark* (1998) 66 Cal.App.4th 1344, 1355; see also *Nizam-Aldine v. City of Oakland* (1996) 47 Cal.App.4th 364, 373 [explaining that, under the First Amendment, the "common law presumption that defamatory speech is false" is inapplicable where the allegedly defamatory statements "concern a matter of public interest"].)

---

[6] Because section 425.16, subdivisions (e)(3) and (e)(4) apply to all of plaintiffs' claims, we need not decide whether plaintiffs' claims based on the November 5 article also fall within the scope of section 425.16, subdivision (e)(2).

13

In opposing defendants' anti-SLAPP motion, plaintiffs submitted only two short declarations from Flater and Gallaher in order to demonstrate the falsity of the allegedly defamatory articles. Neither declaration addressed any campaign spending prior to the 2016 election, so plaintiffs necessarily failed to make a prima facie showing of the falsity of statements in the articles relating to past conduct. For example, the Complaint alleges as defamatory language attributed to defendant McCuan in the October 28 article to the effect that Gallaher has a "pattern" of " 'sprinkling money around' to family members to maximize payments to — and potentially influence with — council candidates." The Complaint also emphasizes the portion of the article in which McCuan is quoted as saying, "Bill Gallaher uses his family as a shell game, and has for a long time, in order to channel support to candidates of his liking." Plaintiffs failed to make a prima facie showing of falsity of those and any other statements in defendants' articles that made reference to plaintiffs' conduct prior to the 2016 election.[7] (See *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1153 [defendant's "failure to produce any evidence on this issue, an issue on which it would bear the burden of proof at trial, leads us to conclude [defendant] does not have a reasonable probability of success on its defamation cause of action because it cannot prove the statements . . . were false"].)

Furthermore, although plaintiffs' declarations purport to address the 2016 election, neither declaration addresses the precise alleged implied defamatory assertion repeatedly made in the articles—that Gallaher was the source of funds for Flater's *independent expenditures*. Instead, Flater averred in his declaration that "[n]o one, including, Mr. William Gallaher, ever provided me or my wife with any money to donate to any political candidates during the 2016 Santa Rosa City Council race." Similarly, Gallaher averred, "I did not give Mr. Flater or his wife, Molly Flater, money for any political contributions they may have made during the 2016 Santa Rosa City Council race." However, the

---

[7] McCuan's statements can also be read to encompass the 2016 election, and later in this part of the decision we address whether plaintiffs made a prima facie showing of falsity based on any alleged implied assertions by McCuan regarding the 2016 election.

allegedly defamatory focus of the articles was not Flater's modest $500 campaign contribution/donation during the 2016 election.  Instead, the " ' "the gist, the sting" ' " (*Vogel*, *supra*, 127 Cal.App.4th at p. 1021) of the alleged defamatory articles was the alleged implied assertion that Gallaher was the source of Flater's "unprecedented" independent spending on "canvassing and mailers," which was "separate from money the candidates raise[d] themselves."

Indeed, all five of the media defendants' articles emphasized the distinction between donations/contributions and independent expenditures, and all emphasized Flater's "record" independent spending that "accounts for more than a third of the total in the race, including spending by candidates' campaigns."  For example, the October 28 article noted that "Local campaign finance rules cap individual donations directly to candidate campaigns at $500 per donor per election cycle.  But there is no limit to the amount of money that individuals or organizations can spend on independent expenditures, as long as they report the spending and don't collaborate with candidate campaigns."  The article then quoted a candidate who stated, in reference to the spending by Flater and an anti-rent control group, " 'We've talked for years about the effect of *Citizens United* on money in politics, and I think this is really Santa Rosa's first taste of it at the local level.' "  Another candidate was described to have "said he worked hard to raise money from a broad cross-section of the community over the past year.  To have other candidates benefit from independent expenditures by wealthy benefactors late in the race is 'frustrating' and undermines the local democratic process."

The distinction between independent spending on an election and contributing/donating money to a candidate is at the heart of the decision in *Citizens United*, *supra*, 558 U.S. 310.  There, the court compared "direct contributions" and "independent expenditures."  (*Id.* at p. 357.)  The court explained that "limits on direct contributions" had been sustained "in order to ensure against the reality or appearance of corruption."  (*Ibid.*)  But, the court reasoned, independent expenditures were different because " '[t]he absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate,

15

but also alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate.' Limits on independent expenditures . . . have a chilling effect extending well beyond the Government's interest in preventing quid pro quo corruption. The anticorruption interest is not sufficient to displace the speech here in question." (*Ibid.*) Although the soundness of the Supreme Court's reasoning has been the subject of much debate,[8] the fact that the distinction between independent expenditures and campaign contributions was at the heart of *Citizen United's* constitutional analysis further supports our conclusion that plaintiffs' showing that Gallaher was not the source of Flater's 2016 campaign contributions/donations does not rebut defendants' alleged implied assertion that Gallaher was the source of Flater's *independent spending*.

In their appellate briefing, plaintiffs do not deny independent expenditures are materially distinct from campaign contributions/donations. Instead, they assert "Flater's declaration addressed *both* contributions and independent expenditures." (Bolding in original replaced with italics.) However, rather than citing to and quoting from the Flater declaration submitted in opposition to the anti-SLAPP motion, plaintiffs cite to a *prior* Flater declaration submitted in support of plaintiffs' motion to conduct discovery. In that declaration, dated May 10, 2017, Flater averred that "The money I donated to political candidates or the independent expenditure campaign during the 2016 Santa Rosa City Council elections belonged to me and my wife," and that "No one, including Mr. Gallaher, ever provided me with any money to donate to any political candidates or the independent expenditure campaign during the 2016 Santa Rosa City Council elections."

---

[8] "In the few years since its issuance, *Citizens United's* holding concerning the speech rights of corporations has generated considerable democratic debate, receiving criticism in the presidential State of the Union address, giving rise to resolutions in Congress to amend the Constitution, and sparking calls for reconsideration within the United States Supreme Court itself. Many have agreed with the Supreme Court majority, while others have concluded the Constitution must be amended to permit renewed restraints on corporate involvement in popular elections." (*Howard Jarvis Taxpayers Assn. v. Padilla* (2016) 62 Cal.4th 486, 495.)

16

In contrast, in the May 17 declaration subsequently submitted in opposition to the anti-SLAPP motion, Flater averred only that "the donations I made during the 2016 Santa Rosa City Council race were made on my behalf alone" and that "[n]o one, including, Mr. William Gallaher, ever provided me or my wife with any money to donate to any political candidates during the 2016 Santa Rosa City Council race." In their appellate briefing, plaintiffs fail to acknowledge the discrepancy, and they certainly have provided no authority that this court can ignore the May 17 declaration actually submitted in opposition to defendants' motion and instead rely on the prior declaration. (See § 425.16, subd. (b)(2) ["In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."].) To the contrary, the inclusion of the reference to independent expenditures in the May 10 declaration suggests that its omission from the May 17 declaration was intentional—for all practical purposes, it is a concession that plaintiffs cannot prove the falsity of the alleged implied assertion that Flater's spending was funded by Gallaher or another source. (See *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1262 [plaintiff "tacitly concede[d]" truth of undisputed portion of alleged defamatory statement]; *Vogel*, *supra*, 127 Cal.App.4th at p. 1022 [plaintiff's "failure to plainly refute the defamatory imputation by stating the true facts may be understood to imply" the truth of the implied assertion].)

During oral argument, plaintiffs argued for the first time that the references to donations and contributions in the Flater and Gallaher declarations encompass independent expenditures. In essence, they argue independent expenditures are a kind of political contribution or donation on a candidate's behalf. That argument is unavailing as to Flater's May 17 declaration when viewed in light of his May 10 declaration. As to Gallaher, plaintiffs' argument makes his declaration at best ambiguous. Under their reasoning, Gallaher's averment that he did not give Flater "money for any political contributions" could be read either as denying funding only direct donations or as denying funding both direct donations as well as the independent expenditures that are the focus of defendants' articles.

17

However, even if we treat Gallaher's declaration as ambiguous, it would not be sufficient to satisfy plaintiffs' burden of making " ' "a sufficient prima facie showing of facts to sustain a favorable judgment." ' " (*Navellier*, *supra*, 29 Cal.4th at pp. 88–89.) If treated as ambiguous, Gallaher's declaration is consistent with both the truth and falsity of the alleged implied defamation in the media defendants' articles. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 852 [in antitrust action, "[a]mbiguous evidence or inferences showing or implying conduct that is as consistent with permissible competition by independent actors as with unlawful conspiracy by colluding ones" is insufficient to show a triable issue in summary judgment context].) More to the point, the "ambiguity [is] striking considering the presumptive ease with which [Gallaher] could have stated the true facts." (*Vogel*, *supra*, 127 Cal.App.4th at p. 1022; accord *Industrial Waste & Debris Box Services, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1160 (*Industrial Waste*).) Given the focus of the media defendants' articles on independent expenditures and the sharp distinction in the law between independent expenditures and direct donations/contributions, it was incumbent on plaintiffs to unambiguously deny Gallaher's funding of the independent expenditures in order to make a prima facie showing of falsity. And it would have been extremely simple for Gallaher to do so if, in fact, he did not fund the independent expenditures. Accordingly, Gallaher's "failure to plainly refute the defamatory imputation by stating the true facts may be understood" as an implied concession of the truth of the alleged defamation; at a minimum, his declaration "[c]ertainly . . . was insufficient to establish his ability to prove the substantial falsity of" defendants' articles. (*Vogel*, at p. 1022.)

Although plaintiffs fail to clearly argue the point, their declarations *did* dispute an arguable implied assertion by defendant McCuan in the October 28 and 29 articles that the $1,000 donated by Flater and his wife in the 2016 election came from Gallaher. However, that was part of McCuan's overall assertion that "for a long time" Gallaher had a "pattern" of " 'sprinkling money around' to family members to maximize payments to

18

— and potentially influence with — council candidates."[9] To the extent that included an implied assertion of wrongdoing, the assertion encompassed Gallaher's pre-2016 conduct, the 2016 donations by Flater and his wife, and Flater's 2016 independent spending, of which the $1,000 donation constituted a trivial amount. As explained in *Vogel*, *supra*, 127 Cal.App.4th 1006, " 'Minor inaccuracies do not amount to falsity so long as "the substance, the gist, the sting, of the libelous charge be justified." ' " (*Id.* at p. 1021, quoting *Masson v. New Yorker Magazine* (1991) 501 U.S. 496, 517 (*Mason*); accord *Jackson v. Mayweather*, *supra*, 10 Cal.App.5th at p. 1262.)

In the present case, the sting of McCuan's alleged implied assertion was that Gallaher had a "long time" pattern of misconduct that continued in Flater's 2016 independent expenditures; it was that "unprecedented spending" that was the overwhelming focus of the October 28 article (and all the other articles). Plaintiffs' declarations, which did not even attempt to address Gallaher's pre-2016 conduct or the 2016 independent spending, did not demonstrate the "substantial falsity" of McCuan's statement. (*Vogel*, *supra*, 127 Cal.App.4th at p. 1022; accord *Industrial Waste*, *supra*, 4 Cal.App.5th at p. 1158.) " 'Put another way, the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." ' " (*Vogel*, at p. 1021, quoting *Masson*, supra, 501 U.S. at p. 517; accord *Jackson v. Mayweather*, *supra*, 10 Cal.App.5th at pp. 1262–1263; *Industrial Waste*, at p. 1164.) In the present case, the statement attributed to McCuan would not have cast plaintiffs in a meaningfully less negative light had McCuan made it clear he did not know the source of the $1,000 donated by Flater and his wife in 2016, which amount was insignificant in comparison to the $130,375 Flater had spent by the end of October.

---

[9] When analyzing whether the publication is defamatory, " '[t]he publication in question may not be divided into segments and each portion treated as a separate unit; it must be read as a whole in order to understand its import and the effect that it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning that may be fairly presumed to have been conveyed to those who read it.' " (*Bartholomew v. YouTube, LLC.* (2017) 17 Cal.App.5th 1217, 1227–1228.)

19

The decision in *Jackson v. Mayweather*, *supra*, 10 Cal.App.5th 1240, is instructive. The parties in the case were former boxing champion Floyd Mayweather, Jr. and his former romantic partner, Shantel Jackson, an "aspiring model and actress." (*Id.* at pp. 1245–1246.) Jackson, as relevant here, sued Mayweather due to comments he made during a radio interview that "she had undergone extensive cosmetic surgery procedures." (*Id.* at p. 1247.) Mayweather filed an anti-SLAPP motion, and Jackson averred in opposition to the motion that "he had falsely stated she had surgery to change her nose, chin and cheeks," which "tacitly concede[d]" that she had surgery on her breasts and buttocks. (*Id.* at p. 1262.) The court of appeal held Jackson failed to make a prima facie showing of falsity because she "presented no evidence in opposition to Mayweather's motion, expert or otherwise, that would permit a finder of fact" to find "that surgical enhancement of the face is different for the reputation of an actress or model from the augmentation or sculpting of other parts of her body." (*Id.* at p. 1263.) Accordingly, she failed to show Mayweather's comments had a different effect on the minds of listeners than the truth would have produced. (*Ibid.*) The same is true in the present case with respect to any false implied assertion that Gallaher was the source of the funds for the $1,000 donated by Flater and his wife in 2016.[10]

"The *sine qua non* of recovery for defamation . . . is the existence of falsehood." (*Old Dominion Branch No. 496 v. Austin* (1974) 418 U.S. 264, 283.) "[W]hile it would have been a simple matter to do so, plaintiff[s] submitted no declaration" showing the falsity of the actual allegedly defamatory focus of the media defendants' articles. (*Brodeur v. Atlas Entertainment, Inc.* (2016) 248 Cal.App.4th 665, 679.) Because plaintiffs failed to make a prima facie showing that defendants' allegedly defamatory statements were false, defendants' anti-SLAPP motion should have been granted in its entirety with respect to plaintiffs' defamation claim. (See *Nygård, supra,* 159 Cal.App.4th at p. 1054 ["[I]f [the defendant's] version of events was inaccurate, plaintiffs

_____

[10] At oral argument, plaintiffs' counsel appeared to concede that the sting of defendants' articles was the alleged implied assertion that Gallaher was the source of the funds for Flater's independent expenditures.

could have submitted prima facie evidence of its falsity through the declaration of [plaintiff's chairman and founder]. Because plaintiffs did not do so, we conclude that plaintiffs failed to carry their burden of making a prima facie showing of falsity."]; *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 33 [the plaintiff failed to demonstrate a probability of prevailing because "[b]y failing to deny the charge . . . [plaintiff] has tacitly admitted that the challenged statement was substantially true"]); *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 357–358 ["Given all of what plaintiff does not dispute or effectively controvert," plaintiff "failed to make a prima facie case that the article's gist was not substantially true"].)

It is also necessary to address plaintiffs' libel per se and false light invasion of privacy causes of action. The trial court granted defendants' anti-SLAPP motion with respect to those claims "on the grounds they are duplicative to the" defamation claim. Plaintiffs argue on appeal that the trial court erred in dismissing those causes of action on that ground. However, plaintiffs do not argue that those claims arise out of different and unprotected conduct, or that those causes of action do not require a showing of falsity. Indeed, plaintiffs suggest the "general rule" is "that if one of the causes of action survives a special motion to strike, the other should as well, and vice versa." Accordingly, the libel per se and false light causes of action are subject to the anti-SLAPP statute and plaintiffs' failure to make a prima facie showing of falsity is fatal them as well as the defamation cause of action. We will reverse in part and remand with instructions that the trial court grant defendants' motion and consider any request for attorney fees, including fees on appeal. (§ 425.16, subd. (c); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 186; *Tuchscher*, *supra*, 106 Cal.App.4th at p. 1248.)[11]

---

[11] Because we conclude plaintiffs failed to make a prima facie showing of the falsity of defendants' articles, we need not and do not consider the propriety of the trial court's rulings about whether various statements in the various articles were or were not actionable on various grounds, including whether they were defamatory, provably false, privileged, or within the scope of a retraction request. Neither need we determine whether the trial court was correct in its rulings regarding whether Flater and Gallaher were limited purpose public figures. Neither need we consider the various evidentiary

21

## DISPOSITION

The trial court's order on defendants' Section 425.16 motion to strike is affirmed in part and reversed in part. The matter is remanded with directions that the court grant the motion in full. On remand, the trial court should consider any request for an award of attorney fees. Costs on appeal are awarded to defendants.

The July 2017 petition for writ of mandate/prohibition filed by the media defendants is denied as moot. Each party shall bear its own costs in the writ proceeding.

---

issues raised by the parties on appeal, because none of the disputed evidence is material to our decision. For the same reason, the media defendants' January 22, 2018 request for judicial notice is denied. Finally, we deny as moot the media defendants' July 2017 petition for writ relief challenging the trial court's order granting plaintiffs discovery on the issue of whether defendants acted with malice in publishing the challenged statements about Flater.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BURNS, J.

(A151968, A152008, A152320)