Filed 4/10/23  Khalsa v. Dhillon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| GURMAIL SINGH KHALSA et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BHUPINDER SINGH DHILLON et al., <br><br> Defendants and Appellants. | H048871 <br> (Santa Clara County <br> Super. Ct. No. 20-CV-361652) |

Defendants challenge the trial court's denial of their special motion to strike plaintiffs' complaint against them for libel, false light, and intentional interference with contractual relations.  Defendants moved to strike the complaint under California's anti-SLAPP statute, which provides that any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)[1]  The trial court found that defendants did not meet their initial burden of showing that plaintiffs' claims arose from protected activity, and therefore did not reach the question of whether plaintiffs would likely

---

[1]  "SLAPP" is an acronym for "strategic lawsuits against public participation."  Unspecified statutory references are to the Code of Civil Procedure; unspecified subdivision references are to section 425.16.

prevail on their claims. We will reverse the order and remand to the trial court for consideration of that question.

## I. BACKGROUND

Plaintiffs Gurmail Singh Khalsa and Harpal Singh Chahal are candidates for seats on the Parbandhak Committee of the Sikh Gurdwara-San Jose. The Sikh Gurdwara-San Jose (the Gurdwara) is a religious non-profit association whose general body consists of Sikh persons throughout the San Jose area. The Gurdwara is the largest Sikh temple in North America. The Parbandhak Committee (the Committee) serves as the Board of Directors of the Gurdwara, and its members are elected every two years. Thousands of people vote in the Committee election.

Defendants Bhupinder Singh Dhillon, Sukhdev Singh Bainiwal, Gurinder Pal Singh, Hardev Singh Takhar, Rajinder Singh Mangar, Sohan Singh Dhanota, Pritam Singh Grewal, Surjit Singh Bains, Kirpal Singh Atwal, Bahadur Singh Deol, Narinder Kaur Maheru, Narinderpal Singh, Balbir Singh Bains, Dharam Singh Dhillon, Harparminder Singh Powar, Gurbux Singh Dhillon, Kuldip S. Shergill, Gurpreet Singh Sethi, Harjinder Singh Ladhar, Pritpal Kaur, and Sharanjit K. Bandal are current members of the Committee. Defendant Boota Singh Basi manages defendant publication Sanjhi Soch Weekly Newspaper. Defendant S.P. Singh manages defendant publication Kafla newspaper. Both the Sanjhi Soch Weekly Newspaper and the Kafla newspaper are published in the Punjabi language, and we rely here on English-language translations provided in plaintiffs' complaint.

A Committee election was initially scheduled for September 22, 2019, before it was enjoined by court order. Plaintiffs were two members of a 21-person slate challenging the 21 incumbent Committee members. According to the complaint, the " 'elections process became heated' " as plaintiffs' slate " 'advocated for greater transparency' " and " 'a progressive management model' " while the current Committee was " 'seen as the old guard or establishment' " and " 'became excessively

2

confrontational in a desperate bid to hold power.' " In September 2019, the Committee mailed an election manifesto to voters' homes. Plaintiffs allege that the manifesto contained numerous false statements, such as that members of plaintiffs' slate, including Khalsa, have criminal records; Khalsa was " 'accused, arrested, and convicted of fraud' " against the United States Postal Service (USPS); and members of plaintiffs' slate " 'basically have cheated' " the Gurdwara's congregation by using the " 'hard-earned money' " of the congregation " 'for their own benefit.' "

Plaintiff Khalsa alleges that the Kafla Newspaper published two false statements about him in September 2019: that he " 'was arrested for fraud' " against the USPS and " 'was also accused of doing unethical transactions in transferring property.' " Plaintiffs allege that the Sanjhi Soch Weekly Newspaper published false statements about them in September 2019, allegedly warning readers to beware that plaintiff Chahal would " 'start cheating and taking advantage of innocent people at the Gurdwara.' " It also described Chahal as a " 'Pandit' " and " 'fake Sikh' " whose " 'criminal background' " was " 'full of black deeds,' " and plaintiffs' slate as " 'fake Khalistanis' " who would " 'lead people astray because they included a fake person like Harpal Chahal.' "[2] With respect to Khalsa, the September publication stated that " 'his background is criminal' "; " 'he was arrested for fraud by the post office' "; he was " 'criminally prosecuted in a case for transferring properties to others' "; " 'he was handcuffed' "; and referenced rape by Khalsa's son who " 'is following in his father's footsteps.' "

In October 2019, the Sanjhi Soch Weekly Newspaper allegedly published additional false statements about Khalsa. The October publication stated that Khalsa " 'is known because of his Black Deeds in the public' " and is also known as a " 'newspaper thief' " after stealing copies of the newspaper. It further stated that, while Khalsa wears " 'religious dress' " at the Gurdwara, " 'his habits are of thieves.' "

---

[2] According to the record in support of defendants' anti-SLAPP motion, a Pandit is a Hindu priest, and a Khalistani is a Sikh supporting an independent Sikh nation.

Plaintiffs sued members of the Committee and both newspapers for libel, false light, and intentional interference with contractual relations. Defendants moved to strike the complaint, arguing that the claims arose from defendants' protected activity and lacked merit. The trial court denied the motion, finding that defendants had not met their burden to show that plaintiffs' claims arose from protected activity. Defendants appeal that order.

## II. DISCUSSION

The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) A person may file an anti-SLAPP motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech" in connection with a public issue. (§ 425.16, subd. (b)(1).) In evaluating an anti-SLAPP motion, the trial court first determines whether the challenged claims arise from protected activity. (*Ibid.*; *Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 757 (*Kurz*).) If the moving defendants make that prima facie showing, the burden shifts to the plaintiffs, who may defeat the motion by demonstrating a probability of prevailing on the merits. (§ 425.16, subd. (b)(1); *Kurz*, at pp. 757–758.) In deciding whether a claim is subject to the provisions of section 425.16, the trial court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) The Legislature has expressly declared that the anti-SLAPP statute is to be broadly construed "to encourage continued participation in matters of public significance." (§ 425.16, subd. (a).)

An order denying an anti-SLAPP motion is appealable, and our review is de novo. (§ 425.16, subd. (i); *Kurz*, *supra*, 221 Cal.App.4th at p. 758.) We review the trial court's evidentiary rulings in connection with an anti-SLAPP motion for abuse of discretion. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1536; *Morrow v. Los Angeles Unified*

4

*School Dist.* (2007) 149 Cal.App.4th 1424, 1444.) Where the trial court determined that plaintiffs' claims did not arise from protected activity, and thus did not determine whether plaintiffs are likely to prevail on those claims, we may decide the latter issue in the first instance or remand to the trial court. (See *Collier v. Harris* (2015) 240 Cal.App.4th 41, 57–58 (*Collier*) [contrasting cases].) Here, we find plaintiffs' claims arise from protected activity by defendants, and we will remand the matter for the trial court to consider whether plaintiffs are likely to prevail on the merits.

## A. PLAINTIFFS' EVIDENTIARY OBJECTIONS

As a preliminary matter, the trial court sustained plaintiffs' objections to the evidence defendants submitted in support of the anti-SLAPP motion. Defendants contend on appeal that the trial court abused its discretion in summarily sustaining those objections in their entirety, without any explanation. We note that summary rulings on evidentiary objections should be avoided where, as here, the objections are numerous and are "based on a variety of alleged problems, such as lack of foundation, vagueness, speculation, and lack of personal knowledge." (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.) We need not address plaintiffs' evidentiary objections, however, because we conclude the complaint, read in conjunction with the unchallenged evidence, alleges protected activity. (See § 425.16, subd. (b)(2) ["In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"]; *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 929 ["when the complaint itself alleges protected activity, a moving party may rely on the plaintiff's allegations alone in arguing that the plaintiff's claims arise from" protected activity].) On remand, the trial court may elect to revisit those objections, specifying the grounds for any rulings.

## B. DEFENDANTS' ARGUMENTS IN THE TRIAL COURT

Plaintiffs contend that defendants waived various appellate issues by failing to raise them in the trial court. But, as the trial court noted in its order, defendants argued

broadly that plaintiffs were "candidates for election" whose conduct therefore "constituted a public concern." Defendants also argued that "the alleged defamatory statements concern matters of public interest." Defendants make the same arguments on appeal. Although the trial court found those arguments to be unsupported by evidence, we independently assess the record in our de novo review. (*City of Costa Mesa v. D'Alessio Investments, LLC* (2013) 214 Cal.App.4th 358, 371.) And as we will explain, we reach a different conclusion based on our review of the record.

### C. PLAINTIFFS' CLAIMS AGAINST INDIVIDUAL COMMITTEE MEMBERS[3]

Defendant Committee members contend the statements they allegedly made in the Committee's election manifesto are protected free speech according to section 425.16. The statements are arguably protected under either subdivision (e)(3) or subdivision (e)(4) of that section.

Section 425.16, subdivision (e)(3) defines protected activity as including "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," and subdivision (e)(4) further defines protected activity as including "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Subdivision (e)(4) serves as a catch-all provision. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139–140 (*FilmOn*).) For purposes of applying subdivision (e)(4), arguably broader than subdivision (e)(3), no public forum is required and even private conduct is protected if it is in furtherance of the constitutional rights of petition or free speech in connection with a public issue. (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736.) Both subparts

---

[3] Plaintiffs ask us to take judicial notice of the unpublished opinion by a different panel of this court in another case involving two Committee members. As plaintiffs' request is unopposed and defendants also discuss that case in their reply brief, the request is granted. But, as noted in that opinion, that case did not involve election-related speech. The analysis contained in the opinion thus has little relevance to this case.

"are subject to the limitation that the conduct must be in connection with an issue of public interest." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*); see also *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123.)

Plaintiffs' claims against the incumbent Committee members arise from an election manifesto alleged to have been mailed to prospective voters in what plaintiffs characterize as a "desperate attempt to hold power." "Speech by mail," including "the mailing of a campaign flyer, is a recognized public forum under the SLAPP statute." (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 674 (*Macias*).) The *Macias* court held that statements made in a campaign flyer, mailed to prospective voters by a candidate for local union office, were made in a public forum for purposes of section 425.16. (*Ibid.*) As in *Macias*, the statements at issue here were made by candidates for an elected position and commented on the suitability of those candidates' opponents for that position. To the extent the statements were also distributed electronically, as plaintiffs allege, the Internet is a public forum. (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 (*Du Charme*).) And campaigning, whether for public office or otherwise, is quintessential free speech. (See, e.g., *Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451 [campaign for county board of supervisors]; *Macias*, at p. 673 [campaign for local union office]; *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 950 [congressional campaign].) The application of either subdivision (e)(3) or subdivision (e)(4) to the Committee members' statements turns on whether those statements were made in connection with a public issue or an issue of public interest.

Speech may be connected to a public issue or an issue of public interest if it concerns "a person or entity in the public eye" or "could affect large numbers of people beyond the direct participants" (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898); it takes place "in the context of an ongoing controversy, dispute or discussion" (*Du Charme*, *supra*, 110 Cal.App.4th at p. 119); or it "affects a community in a manner

7

similar to that of a governmental entity" (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 (*Damon*)). (*FilmOn*, *supra*, 7 Cal.5th at pp. 145–146.) A court first considers content to determine what public issue or issue of public interest the speech implicates. It then examines the relationship between the speech and the public conversation about that issue, focusing on whether the speech in some way contributed to or furthered the discourse that makes the issue one of public interest. (*Id.* at pp. 149–151.) By observing content and context together, the court determines whether the statements at issue further the exercise of constitutional speech rights in connection with a matter of public interest. (*Id.* at p. 154.) Speech regarding an issue that is "not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community)," may still be protected by section 425.16 if it relates to "an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme*, at p. 119.)

Here, the Committee members' statements concerned the Committee election originally scheduled for September 22, 2019. The essence of the statements—that certain candidates had criminal records and had misused funds belonging to the Gurdwara's congregation—directly relates to those candidates' suitability for service on the Committee. While that issue may not be "of interest to the public at large," it is one of interest to the "limited, but definable portion of the public" that attends the Gurdwara and participates in debates or elections regarding its governance. (*Du Charme*, *supra*, 110 Cal.App.4th at p. 119; see *Damon*, *supra*, 85 Cal.App.4th at p. 479 [management of homeowners' association was of interest to members of the association]; *Macias*, *supra*, 55 Cal.App.4th at pp. 673–674 [candidate's qualifications for position of union president were of interest to members of the union].) Defendants' unchallenged evidence establishes that the affected community includes thousands of people.

The statements were also made "in the context of an ongoing controversy, dispute or discussion" regarding the Committee election. (*Du Charme*, *supra*, 110 Cal.App.4th at p. 119.) They appeared in an election manifesto alleged to have been authored by the incumbent Committee members and distributed shortly before the scheduled election. The complaint itself describes the election process as a " 'heated' " one marked by tension and disagreement between the two competing slates of candidates. Campaign speech by one group of candidates regarding the qualifications, or lack thereof, of the other group would by its very nature advance that ongoing dispute. Allegations that the speech at issue "damaged the reputations" of plaintiffs, and caused them to suffer "ridicule, obloquy, and contempt," further suggests its connection to discourse about the election.

We therefore view plaintiffs' claims against the current Committee members as arising from free speech in connection with an issue of public interest. Plaintiffs' argument that defendants' statements were false and therefore not protected is properly addressed under the second prong of the anti-SLAPP analysis. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 965 [factual dispute regarding the legality of defendants' conduct is not resolved under prong one but must be raised by plaintiffs at prong two].)

**D. PLAINTIFFS' CLAIMS AGAINST THE NEWSPAPERS**

Defendant newspapers and their operators contend that the statements they published are protected free speech under section 425.16. Again, those statements are arguably protected under either subdivision (e)(3) or subdivision (e)(4) of section 425.16.

Courts have considered news media a public forum for purposes of subdivision (e)(3) "if it is a vehicle for discussion of public issues and it is distributed to a large and interested community." (*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1161.) In *Damon*, *supra*, 85 Cal.App.4th at pp. 476–477, the court held that statements made in a newsletter distributed to members of a homeowners' association were made in a public forum even though access to the newsletter was selective and limited. The court

9

in *Maranatha Corrections, LLC v. Dept. of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1086 likewise concluded that a local newspaper constitutes a public forum if it is a vehicle for public discussion. *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1039 found that an interview published in a magazine took place in a public forum, as the hallmark of a public forum is public access rather than the right to public comment. And the court in *Sonoma Media Investments, LLC v. Superior Court* (2019) 34 Cal.App.5th 24, 33–34 (*Sonoma*), held that a newspaper and its website were a public forum because the public could access them; it was irrelevant that the public could not also actively participate or interact in the forum. (But see *Weinberg*, *supra*, 110 Cal.App.4th at pp. 1130–1131 [most newspapers, newsletters, and other media outlets are not public forum because access is selective and limited].)

The record before us does not reveal the precise size of the community to which either newspaper is distributed, although plaintiffs' allegations of significant reputational harm suggest that both newspapers have large and interested audiences. In any event, "reporting the news is an exercise of free speech." (*Simmons v. Bauer Media Group USA, LLC* (2020) 50 Cal.App.5th 1037, 1044.) The same is true of editorializing. Plaintiffs' claims against the two newspapers and their operators arise from stories published in the newspapers about plaintiffs' alleged misdeeds, along with editorial commentary about plaintiffs' perceived character flaws. We need not decide whether either newspaper constitutes a public forum under section 425.16, subdivision (e)(3), as subdivision (e)(4) would cover the published statements so long as they were made "in connection with a public issue or an issue of public interest." We conclude that they were, for largely the same reasons we have already discussed regarding the Committee members' statements.

The content of the published statements (that plaintiffs and other members of their slate were of poor character) relates directly to the Committee election in which plaintiffs were candidates. Although the allegedly defamatory excerpts quoted without context in

10

the complaint do not specifically reference the election, we must look beyond the complaint and consider the evidence submitted by defendants. (§ 425.16, subd. (b)(2).) The declaration of S.P. Singh, Managing Editor of the Kafla Newspaper, explains that information about plaintiffs was published in the September 11–17 edition of that newspaper "in the interest of the public's awareness because the impending election was only one week away." The declaration of Boota Singh Basi, President and Chief Editor of the Sanjhi Soch Weekly Newspaper, suggests that the excerpts from that newspaper included in the complaint were of interest to the Sikh community because plaintiffs had made themselves "electoral candidates." Plaintiffs did not object to those declarations, which confirm what the complaint itself implies: that the September publications concerned the " 'heated' " Committee election scheduled to take place just days later. As that election was enjoined by court order, it remained a live controversy at the time the October edition of the Sanjhi Soch Weekly Newspaper was published.

The published statements therefore related to "an ongoing controversy, dispute or discussion" of interest to the "limited, but definable portion of the public" that was following the contested Committee election. (*Du Charme*, *supra*, 110 Cal.App.4th at p. 119.) Media coverage of elections is an important component of the democratic process (*Sonoma*, *supra*, 34 Cal.App.5th at p. 35), whether the electorate consists of the public at large, or of several thousand participants in a self-contained community. (See *Damon*, *supra*, 85 Cal.App.4th at p. 479 [newsletter distributed to roughly 3,000 members of homeowners' association contributed to fundamentally political discussion of elections to the association's board of directors].) In the context presented here, we conclude the newspapers' published statements regarding plaintiffs were connected to an issue of public interest and protected by section 425.16, subdivision (e)(4).

Here again, insofar as plaintiffs argue the newspapers acted unlawfully in publishing the statements at issue, the argument is properly considered under the second anti-SLAPP prong. (See *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337

11

[defendant's newsgathering furthered the exercise of its right to free speech, notwithstanding plaintiff's argument that defendant used illegal newsgathering methods]; *Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 165–166 [same].)

## E. LIKELIHOOD OF PLAINTIFFS PREVAILING

Having determined that plaintiffs' claims arise from protected activity, we must either proceed to prong two of the anti-SLAPP analysis and determine whether plaintiffs are likely to prevail on their claims or allow the trial court to consider that question on remand. "A few appellate courts have decided the matter when a quick decision was necessary." (*Collier*, *supra*, 240 Cal.App.4th at p. 58; see, e.g., *Schwarzburd v. Kensington Police Protection & Community Services Dist. Bd.* (2014) 225 Cal.App.4th 1345, 1355 [proceeding to second prong where contract at issue was about to expire].) "The majority of appellate courts, however, have declined to do so either because contested evidentiary issues existed or simply because it was appropriate for the trial court to decide the issue first." (*Collier*, *supra*, 240 Cal.App.4th at p. 58; see, e.g., *Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 213 [declining to consider second prong given outstanding evidentiary and substantive matters and remanding to the trial court].) Here, outstanding evidentiary issues remain because the trial court declined to rule on defendants' evidentiary objections. As discussed above, remand will also allow the trial court to revisit its summary ruling on plaintiffs' evidentiary objections.

It is generally the better practice for the trial court to decide contested issues in the first instance. (See *Collier*, *supra*, 240 Cal.App.4th at p. 58 ["when we decide a matter in the first instance, we deprive the parties of a layer of independent review available to them when the matter is decided initially by the trial court"].) We see no reason to depart from that favored procedure in this case, especially given that the parties' appellate briefing focused primarily on the first prong of the anti-SLAPP analysis. We will therefore remand to the trial court to consider the second prong.

12

### III. DISPOSITION

The order denying the special motion to strike is reversed and the matter is remanded to the trial court. On remand, the trial court shall rule on defendants' evidentiary objections and determine whether plaintiffs are likely to prevail on their claims. The trial court may revisit its ruling on plaintiffs' evidentiary objections, and if it does so shall specify in its order the grounds for the exclusion of any evidence. Defendants shall recover their costs on appeal by operation of California Rules of Court, rule 8.278, subdivision (a)(1).

13

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Wilson, J.

**H048871**
*Khalsa et al. v. Dhillon et al.*